### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

IN RE THORNBURG MORTGAGE, INC.                              No. CIV 07-815  JB/WDS
SECURITIES LITIGATION

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Friedman, Billings, Ramsey & Co.,

Inc's Motion for a Status Conference Prior to Filing Any Answer or Rule 12 Motion, filed August

27, 2008 (Doc. 82).  The Court held a hearing on September 15, 2008.  At the hearing, the Court

informed the parties that it would treat the hearing as the status conference Defendant Friedman,

Billings, Ramsey & Co., Inc ("FBR") requested and rule on the merits of the issue raised.  The

primary issue is therefore whether the notice published under the Private Securities Litigation

Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), is defective because the Lead Plaintiffs'

amendments to the Complaint have raised issues too far afield of the notice given.  The Court

concludes that the original notice given in this case was and is adequate.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Thornburg Mortgage, Inc. is a publicly traded mortgage lender.  After

Thornburg's stock price dipped sharply in August of 2007, in apparent response to several ratings

agencies lowering its credit rating, several lawsuits were filed and ultimately consolidated before

this Court.  The Lead Plaintiffs allege that Thornburg and its officers made false and misleading

statements about the company's financial health and especially that Thornburg failed to disclose

billions of dollars in mortgage-backed securities backed by subprime or "Alt-A" loans.

On February 8, 2008, the Court consolidated several actions here, and appointed the Lead

Plaintiffs and class counsel.  See Order Consolidating Related Actions, Appointing Lead Plaintiffs,

and Approving Lead Plaintiff's Selection of Lead Counsel and Liason Counsel ¶¶ 1-3, at 2-3 (Doc. 49)("Consolidation Order").   Shortly afterwards the Court ordered the Lead Plaintiffs to file a Consolidated Complaint.   While preparing for this Consolidated Complaint, the Lead Plaintiffs continued their investigations into Thornburg.

According to the Lead Plaintiffs, they learned that, on March 4, 2008, Thornburg's auditor, KPMG, LLP, had advised Thornburg that it was withdrawing its audit opinion for the 2007 calendar year, and that KPMG asserted that, based on "conditions and events that were known or should have been known to" Thornburg, Thornburg's 2006 and 2007 year-end financial statements contained "material misstatements associated with available for sale securities."   Plaintiffs' Opposition to Defendant Friedman, Billings, Ramsey & Co., Inc's Motion for a Status Conference Prior to Filing Any Answer or Rule 12 Motion (Docket Entry No. 82, Filed August 27, 2008) at 6, filed September 10, 2008 (Doc. 90)("Response")(internal quotation marks omitted and emphasis removed).   The Lead Plaintiffs assert that, although KPMG advised Thornburg of these issues on March 4, 2007, the company waited three days to publicly reveal KPMG's letter.   See id. at 6-7.   Partly as a result of this information, the Lead Plaintiffs elected to add claims against FBR, who underwrote stock offerings between September 2007 and January 2008.   See id. at 7.   The Lead Plaintiffs allege that these offerings failed to disclose Thornburg's Alt-A backed securities and its origination of Alt-A mortgage loans, and also incorporated the 2006 financial information that the Lead Plaintiffs contend KPMG determined to be false and in need of restating.   See id.

On May 27, 2008, the Lead Plaintiffs filed their current, consolidated Complaint, which expanded the class period, and added new claims and defendants.   See Consolidated Class Action Complaint (Doc. 68)("Consolidated Complaint").   The Consolidated Complaint made several changes, including: (i) expanding the class period by pushing the class closing date from August 17,

2007 to March 19, 2008; and (ii) adding claims under the Securities Act of 1933 against several new Defendants -- the underwriters who worked with Thornburg on several securities offerings after the original class period end-date of August 17, 2007, which includes FBR.  FBR then filed its motion, asserting that the Lead Plaintiffs have not complied with the PSLRA's notice requirements before raising the new claims.

FBR contends that, without the required notice, "the claims against FBR cannot proceed even to the stage of filing an answer or Rule 12(b)(6) motion to dismiss."  Motion at 1.  Arguing that "this issue is most properly addressed prior to and separate from the filing of any motion to dismiss, FBR seeks to schedule a status conference . . . to seek resolution from the Court."  Id. at 1-2.  FBR maintains that the Consolidated Complaint "alleges an entirely new action, against a new party, for new claims arising from new transactions, on behalf of new plaintiffs . . . ."  Motion at 5.  While acknowledging that "FBR is not entitled to select the plaintiff in a suit against it," FBR nonetheless contends that it is "entitled to insist that the Lead Plaintiffs have complied with the PSLRA," and that without PSLRA compliance, any judgment or settlement in this case may be subject to collateral attack or "de novo litigation by a purchaser claiming . . . not to have been covered by" the PSLRA notice in this case.  Motion at 8.  FBR urges that "the Court should limit the claims of the [Complaint] to those described by the previously published PSLRA notices."  Motion at 10.

The Thornburg Defendants[1] filed a joinder in FBR's motion.  See Thornburg Defendants' Response to and Joinder in Motion for Status Conference, filed September 10, 2008 (Doc. 88)("Thornburg Response").  They agree that "an early status conference" would be appropriate.

---

[1] The Thornburg Defendants are Defendants Thornburg, Garrett Thornburg, Larry Goldstone, Joseph Badal, Paul Decoff, Clarence Simmons, Ann-Drue Anderson, David Ater, Eliot Cutler, Ike Kalangis, Owen Lopez, Francis Mullin, and Stuart Sherman.

Id. at 5.  Additionally, the Thornburg Defendants argue that the Complaint cannot include "any financial loss that postdates October 22, 2007."  Thornburg Response at 5.

The Lead Plaintiffs counter that FBR's motion "is a bald attempt to further delay these proceedings" and that FBR should be required to litigate this issue as a motion to dismiss.  Response at 1.  They also contend that the notice given was sufficient to encompass the additional allegations in the current Complaint.  See Response at 2-4.  They maintain that the new allegations are proper additions based on further investigation because they are "'based on a common nucleus of facts alleging misrepresentation of the financial condition" of Thornburg.  Id. at 8 (quoting In re Sunbeam Sec. Litig., 1998 WL 1990884 at *4 (S.D. Fla.)).  Republication is unnecessary, they argue, because the original notice was adequate and republication is not needed for an amendment to the Complaint.  See Response at 10-13.  The Lead Plaintiffs contend that the changes they have made are similar to or less significant than the changes other courts have allowed to occur without the need for a republication of PSLRA notice.  See Response at 14-15.  Finally, they contend that FBR's legal authority for its position supports these issue being raised in a motion to dismiss or in a class certification setting, but not in a "motion for a status conference."  Id. at 16 (emphasis removed).

At the hearing, Howard W. Gutman, FBR's attorney, indicated that he was seeking, as he characterized it, not republication, but "the first publication."  Transcript of Hearing at 17:19 (Gutman)(taken September 15, 2008)(Doc. 121)("Tr.").  Mr. Gutman expressed his concerns about dealing with the PSLRA issue at the same time as a motion to dismiss, but stated that his concerns would be alleviated if the issues were handled seriatim, with the PSLRA handled first.  See Tr. at 20:9-10.  With the agreement of counsel, the Court stated that it would consider the hearing as the status conference that FBR and the Thornburg Defendants requested, and would decide the PSLRA

issue.  55:17-56:21 (Court, Sweet, Gutman & Hubbell) 65:23-66:11 (Court).[2]

## ANALYSIS

Under the PSLRA, within "20 days after the date on which the complaint is filed," plaintiffs are required to publish a notice advising prospective class members of "the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. § 78u-4(a)(3)(A)(i).  The Court does not read this requirement, which by its terms seems to address only an initial complaint, to mandate notice for all amendments to a complaint.  Some amendments may be significant enough to require republication, but the new claims here are sufficiently connected to the earlier claims to be encompassed within the previous notice.  While the Court may, at the class certification phase, have to require sub-classes or separate class counsel, the differences between claims here does not violate the PSLRA's notice provision.

**I.      THE COURT WILL CONSIDER ON THE MERITS WHETHER THE CONSOLIDATED COMPLAINT OBLIGATED THE LEAD PLAINTIFFS TO PROVIDE ADDITIONAL NOTICE UNDER THE PSLRA.**

Before turning to the merits regarding when the PSLRA requires notice, the Court must first decide whether it should reach that issue.  While FBR and the Thornburg Defendants believe that the notice issue is logically prior to the motion-to-dismiss stage, the Lead Plaintiffs contend that this motion is a motion to dismiss cloaked in the guise of a "motion for a status conference."  As the Court stated at the hearing, it will decide the merits of the notice issue, although there is perhaps some procedural irregularity about the posture of this motion.

---

[2] Several of the speakers were unidentified in the unofficial transcript. From the context, two of the speakers were Mr. Gutman and Robert Hubbell, counsel for the Thornburg Defendants. Additionally, one of the counsel for several of the underwriter Defendants agreed with the procedure, although the Court cannot definitively determine from the context whom the counsel was.

It is not clear what relief FBR is seeking.  Its motion requests a status conference and asks the Court "to address" the "fatal deficiencies under the PSLRA."  Motion at 10.  At the hearing, the Court informed the parties that it would treat the hearing as the status conference FBR sought and that it would rule on the merits of the notice issue.  See Tr. at 65:23-66:11 (Court).  To the extent that FBR seeks only that relief, the Court grants the motion.  Assuming that the Court found that the lack of new notice was a fatal flaw, however, it is unclear what, if anything, FBR would have the Court do.  It is unclear whether FBR wants the Court to dismiss the case, require republication, and/or stay the case.  FBR provides no certain answers to these questions and perhaps it does not care, but only seeks to have the Court address the issue under the PSLRA, recognizing that it lacks the ability "to select the plaintiff in a suit against it."  Motion at 8.  FBR indicates that it does not believe that the Lead Plaintiffs can proceed against it without notice, hinting that FBR's request is best characterized as a motion to stay.   At the hearing, however, Mr. Gutman seemed to cast the relief FBR seeks as publication or republication.  See Tr. at 17:19 (Gutman).

Ultimately, the Court need not discern what relief FBR might be seeking.  On the merits, the Court finds that the Lead Plaintiffs have satisfied the PSLRA's notice provision and so need not craft a remedy for a violation.  Although the Court is not confident that this issue is something that needs to be handled before motions to dismiss -- while the issue concerns the "Lead Plaintiffs' authority to proceed against FBR," a rule 12(b)(1) motion to dismiss concerns a court's power to hear a dispute -- the Court need not characterize the motion at this point.  Even if the motion were effectively a motion to dismiss, it would largely be a matter of semantics.  FBR has not indicated that it wishes to raise a challenge based on personal jurisdiction, venue, or service issues, which are the only challenges waived when not raised in an initial motion to dismiss.  See Fed. R. Civ. P. 12(h)(1).  The Court cannot see any other relevant distinction.  Nonetheless, the Court need not at

this time try to fit FBR's motion into any particular mold.

## II.   THE ADDITIONAL CLAIMS IN THE CONSOLIDATED COMPLAINT ARE SUFFICIENTLY SIMILAR TO THE EARLIER CLAIMS THAT THE AMENDMENTS DO NOT TRIGGER A NEW ROUND OF NOTICE.

At some point, new issues raised in an amended complaint may become an attempt to smuggle a new lawsuit in past the PSLRA's notice requirement.  FBR and the Thornburg Defendants urge the Court to view the Lead Plaintiffs' new claims as presenting such a scenario. The Court will decline that invitation.  While there may be issues further down the road about the need for sub-classes, the new claims and Defendants added in the Consolidated Complaint are sufficiently related to the earlier claims that new notice is not required under the PSLRA.

Plaintiffs seeking to maintain a securities class action subject to the PSLRA must give notice to prospective class members within "20 days after the date on which the complaint is filed."  15 U.S.C. § 78u-4(a)(3)(A)(i).  This notice must advise of "the pendency of the action, the claims asserted therein, and the purported class period."  Id. § 78u-4(a)(3)(A)(i)(I).  If multiple actions are filed "on behalf of a class asserting substantially the same claim or claims, . . . only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published" in accordance with the PSLRA's requirements.  Id. § 78u-4(a)(3)(A)(ii).  "Additional notices may be required under Federal rules."  Id. § 78u-4(a)(3)(A)(iii).

This statutory scheme seems to contemplate a single notice period as the general rule.  When "the complaint" is filed, the notice provision is triggered.  Id. § 78u-4(a)(3)(A)(i).  Notably, the statute makes no mention of "complaints," of "a complaint," of "subsequent complaints," of "amendments," or any other similar language that might evidence an intent that the notice provision would come into play multiple times in a single lawsuit.  Instead, the PSLRA seems to view the notice as being a threshold issue that comes up at the beginning of the filing of a lawsuit.

See Greenberg v. Bear Sterns & Co., Inc., 80 F.Supp.2d 65, 69 (E.D.N.Y. 2000)("The statute does not mandate, nor does it suggest, that a Court approved lead plaintiff must re-publish a notice of the purported class after an amended complaint is filed.").  While the PSLRA does not foreclose the possibility of republication and additional notices, the language of the statute cautions against imposing such requirements in all but unusual situations.  Requiring republication in certain situations, as some courts have done, seems to be mostly a matter of judicial gloss on the statute, rather than a requirement firmly rooted in the PSLRA's text.

Reading clause (i) in combination with the other provisions of the PSLRA regarding notice supports this interpretation.  As long as the complaints are "substantially the same," id. § 78u-4(a)(3)(A)(ii), the PSLRA requires only one notice at the beginning of litigation, despite multiple actions being filed, which may contain differences as to the precise claims and class periods being asserted.  Provision is also made for additional notice "under [the] Federal rules," but not for additional notices under the PSLRA.  Id. § 78u-4(a)(3)(A)(iii).  The Court therefore reads the PSLRA to require notice when a lawsuit is first initiated, but to generally leave any further notice thereafter to the standard operation of the Federal Rules of Civil Procedure.  None of the parties seem to argue that the new claims would be improper under federal joinder standards.

Allowing the new claims without new notice is also consistent with what other courts have allowed in securities suits governed by the PSLRA.  One of FBR's problems with the Consolidated Complaint is that it expands the class period by approximately seven months.  Courts "have widely recognized that the intent of the PSLRA is 'to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods [does] not require publication of new notice or start a new 60-day period for the filing of motions to appoint lead plaintiff or lead counsel.'"  Cheney v. Cyberguard Corp., 213 F.R.D. 484,

503 (S.D.Fla. 2003)(quoting In re Sunbeam Securities Litigation at *2 n. 2).  Similar or more sweeping enlargements of class periods have been found to not require republication under the PSLRA.  See Cheney v. Cyberguard Corp., 213 F.R.D. at 502-04 (eleven months); In re Rite Aid Corp. Securities Litigation, 1999 WL 34807713 at *1 (E.D.Pa.)(thirteen months).  Cf. In re Cyberonics Inc. Securities Litigation, 468 F.Supp.2d 936, 938 n.2 (S.D.Tex. 2006)(requiring republication upon motion of intervenor when amended complaint expanded class period to encompass span of time over four months before original period and nearly two years after original period).  Even many of the cases which the Defendants cite recognize that "[c]ourts have generally disfavored republication of notice when a complaint is amended, even where the amendment alters the class period."  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 2005 WL 1322721 at *2 (S.D.N.Y.).  Accord In re Cyberonics Inc. Securities Litigation, 468 F.Supp.2d at 938.  While courts have not previously identified this factor as relevant, it also strikes the Court as notable that the expansion here only pushes the class period forward and does not add any time at the back-end of the period.[3]  Litigation is an ongoing process, and it is not surprising that new time periods might come under the umbrella of a particular case as time passes.  It is somewhat more surprising, however -- although not necessarily significantly so, given the possibility of newly discovered information -- that lead plaintiffs would later seek to expand the class period backwards as well as forwards in time.

FBR also points to the Consolidated Complaint's addition of claims under the Securities Act of 1933, where the original complaints involved claims under the Securities Exchange Act of 1934,

---

[3] Indeed, Lax v. First Merchants Acceptance Corp., 1997 WL 461036 at *1, 4 (N.D.Ill.), found that no new notice was necessary for an expansion of the class period to sixteen months earlier than the originally noticed period.

and to the addition of new Defendants.  Courts have found that the addition of new defendants does not require republication under the PSLRA.  See Greenberg v. Bear Sterns & Co., Inc., 80 F.Supp.2d at 69 (holding that new notice unnecessary when new defendant was added); Lax v. First Merchants Acceptance Corp., 1997 WL 461036 at *4 (finding original notice adequate despite later addition of new defendant).  Nor does the Court see a persuasive reason that new defendants would, in the circumstances of this case, make much of a difference.  The new Defendants here are effectively a product of the new claims and are a result of the underwriter Defendants' alleged role in underwriting securities for several stock offerings on behalf of Thornburg.  It is the underlying conduct alleged that the Court views as more relevant and it is the new allegations, rather than whether new Defendants were added, about which most investors would be interested in potentially receiving notice.  Prospective plaintiffs, after all, would be suing the underwriter Defendants for their alleged participation in misconduct involving Thornburg stock.  The identities of particular underwriting Defendants is almost immaterial for the purpose of providing adequate notice.

The new claims and the underlying allegations are more important here, but the Court ultimately believes that the new claims are sufficiently related to the earlier claims.  Some of the cases that the Thornburg Defendants cite would support a finding that the PSLRA required new notice for the Consolidated Complaint.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., for example, stated that "republication is generally appropriate where an amended complaint asserts new theories or legal claims."  Id.  The Court cannot completely agree with that analysis.  From the perspective of the bench and the bar, it may be that new legal theories seem more important than an expanded class period when it comes to new notice.  From the perspective of the average investor, however, it seems much more likely that the stated class period will be the more important factor.  The purpose of new notice, after all, is to alert prospective lead plaintiffs of the

pendency of an action.  A typical investor is much more likely to believe that a notice does not apply to him or her when the notice specifies a discrete period of time, rather than when a notice outlines a particular legal theory.  "August 2006" means a lot more to most people than whether a lawsuit is brought under rule 10b-5 or under 14(a).  Expanded class periods, however, have not given the courts much pause, and they have been willing to not require republication when an amended complaint expands the class period.

Moreover, from the typical investor's perspective, probably the most determinative fact in a notice is the company at the heart of the complaint and the general outline of the alleged misconduct.  Here, Thornburg remains the company at the center of the litigation, and the claims continue to involve the alleged non-disclosure and misrepresentation of key financial information involving Thornburg's exposure to the sub-prime mortgage market.  The original notice thus likely fulfilled its purpose.[4]

That the similarity of the claims helps fulfill the purpose of the notice requirements dovetails with the language of the PSLRA, which is the touchstone of the issue.  Although the "substantially the same claim" test refers to whether additional notices are initially needed, 15 U.S.C. § 78u-4(a)(3)(A)(ii), and not to subsequent notices, for which, as the Court has noted, the PSLRA does not expressly provide, the various claims in the Consolidated Complaint pass that test because they all arise out of allegations about a continuing course of similar conduct involving failure to disclose financial information about Thornburg's involvement in the sub-prime mortgage market.  See Lax v. First Merchants Acceptance Corp., 1997 WL 461036 at *1, 4 (holding that additional claims

---

[4] The Court notes that no parties have moved to intervene in this case, nor have further actions been referred to the Court under the Court's consolidation order requiring that all "subsequently filed related actions" be consolidated in the District of New Mexico.  Consolidation Order ¶ 1, at 2.

under state law and Securities Act did not render original notice defective because such claims were substantially similar to Exchange Act claims).  At the hearing, one of Mr. Gutman's refrains on the difference between the earlier and newer claims was that the later offerings were recapitalization offers and so were materially different sets of transactions from the earlier offers.  As the Lead Plaintiffs frame their allegations, however, they are focused on the repetition of the earlier financial information that the Lead Plaintiffs allege is incorrect and misleading.  See, e.g., Consolidated Complaint ¶¶ 534, 537, 540 & 543, at 162-66.  While there may be standing issues or class certification issues to address in later proceedings, the Court views the new allegations as being substantially similar to the earlier allegations.

All of the Defendants' discrete arguments ultimately amount to an attempt to show that the Consolidated Complaint made changes to the contours of the lawsuit that are significant enough to warrant republication.  The new claims, however, follow naturally from the initial claims.  The new claims are securities claims arising out of offerings that are alleged to have involved false or misleading financial information that dates back to as early as 2006, which is within the noticed class period.  New defendants are named because new underwriters were involved in the later offerings. The Lead Plaintiffs' allegations are that the new underwriter Defendants, including FBR, became involved in Thornburg's ongoing misrepresentations and non-disclosures of key information. The theme pervading the Consolidated Complaint, including the most recent additions, is the allegation that Thornburg failed to disclose its substantial involvement with the sub-prime mortgage market and the associated risks of that involvement as the sub-prime market collapsed. The new claims are largely allegations that Thornburg continued to do after the original class period what the Lead Plaintiffs allege Thornburg was doing during that initial period.  It is difficult to believe that, as a practical matter, anyone interested in pursuing securities litigation involving

Thornburg is not well aware of this action.  The new claims are closely related to the initial claims expressly covered in the notice, and requiring further notice for the amendments here would serve only to delay the progress of this case and would contravene the PSLRA notice provisions' goal of securing lead plaintiffs as "soon as practicable."  In re Sunbeam Securities Litigation at *2 n. 2.[5]

**IT IS ORDERED** that Defendant Friedman, Billings, Ramsey & Co., Inc's Motion for a Status Conference Prior to Filing Any Answer or Rule 12 Motion is granted in part and denied in part.  The Court has held a status conference on the issue, and with this memorandum opinion and order decides the issue the Court was requested to address.  To the extent that the motion seeks any other requested relief, further relief is denied.  The notice given in this case pursuant to the Private Securities Litigation Reform Act of 1995 was and is adequate.

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Thornburg Defendants also argue that any financial losses from after October 22, 2007 cannot be part of this action.  They point out that the Court, in Lane v. Page, 250 F.R.D. 634, 639 (D.N.M. 2007), quoted from In re Telxon Corp. Sec. Litig., 67 F.Supp.2d 803, 818 (N.D.Ohio 1999): "The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed."  Whether the Lead Plaintiffs can bring a claim for any financial loss occurring after October 22, 2007 strikes the Court as an issue to be raised in a motion to dismiss or motion for summary judgment and the Court will not address it here.  The Court also notes that the language upon which the Thornburg Defendants rely is in the Court's general description of the law in Lane v. Page and is not something that the Court used in deciding the motions at issue in that opinion.

-13-

*Counsel*:

Francis M. Gregorek
Rachele R. Rickert
Patrick Moran
Wolf Haldenstein Adler Freeman & Herz LLP
San Diego, California

-- and --

Fred T. Isquith
Richard A. Sandoval
Rachel S. Poplock
Martin E. Restituyo
Wolf Haldenstein Adler Freeman & Herz LLP
New York, New York

-- and --

Frederick S. Fox
Aviah Cohen Pierson
Kaplan Fox & Kilsheimer
New York, New York

-- and --

Charlotte Itoh
Cody Kelley
Kelley Law Offices
Albuquerque, New Mexico

-- and --

Andrew Zivitz
Benjamin Sweet
Michelle Newcomer
Richard Russo
Schiffrin Barroway Topaz & Kessler LLP
Radnor, Pennsylvania

-- and --

Turner W. Branch
Branch Law Firm
Albuquerque, New Mexico

-- and --

Aaron L. Brody
Stull, Stull & Brody
New York, New York

-- and --

Gregg Vance Fallick
Albuquerque, New Mexico

-- and --

Shane C. Youtz
Albuquerque, New Mexico

-- and --

Samuel P. Sporn
Joel P. Laitman
Daniel B. Rehns
Jay P. Saltzman
Schoengold Sporn Laitman & Lometti, PC
New York, New York

-- and --

Richard A. Lockridge
Nathan D. Prosser
Karen H. Riebel
Lockridge Gindal Nauen & Holstein
Minneapolis, Minnesota

-- and --

Nancy Kaboolian
Abbey Spanier Rodd Abrams & Paradis, LLP
New York, New York

-- and --

Curtis V. Trinko
Law Offices of Curtis V. Trinko, LLP
New York, New York

-- and --

Evan J. Smith
Brodsky & Smith, L.L.C.
Mineola, New York

-- and --

David R. Scott
Scott + Scott, LLC
Colchester, Connecticut

-- and --

Arthur Shingler, III
Scott + Scott, LLP

     *Attorneys for the Plaintiffs*

David F Cunningham
Thompson, Hickey, Cunningham, Clow & April, P.A.
Santa Fe, New Mexico

-- and --

Frank T. Herdman
Rubin Katz Law Firm PC
Santa Fe, New Mexico

-- and --

Robert Hubbell
Robert Badal
Jeffrey Richmond
Paul Foust
Heller Ehrman LLP
Los Angeles, California

>  *Attorneys for Defendants Garrett Thornburg, Larry A. Goldstone,*
>    *Clarence G. Simmons, Anne-Drue M. Anderson, David A. Ater,*
>    *Joseph H. Badal, Eliot R. Cutler, Michael B. Jeffers, Ike Kalangis,*
>    *Owen M. Lopez, Francis I. Mullin, III, Stuart C. Sherman and Thornburg*
>    *Mortgage, Inc.*

Clifford K. Atkinson
John Thal
Atkinson & Thal, P.C.
Albuquerque, New Mexico

-- and --

David Bohan
David Stagman
Christopher J. Stetler
Katten Muchin Rosenman LLP
Chicago, Illinois

>  *Attorneys for Defendants UBS Securities and Bear Sterns & Co.*

Howard W. Gutman
Steven M. Farina
William Pittard
Williams & Connolly LLP
Washington, D.C.

>  *Attorneys for Defendant Friedman, Billings, Ramsey & Co.*

Clifford K. Atkinson
John Thal
Atkinson & Thal, P.C.
Albuquerque, New Mexico

-- and --

-17-

Jonathan C. Dickey
Gibson, Dunn & Crutcher LLP
New York, New York

-- and --

Dean J. Kitchens
Lindsay R. Pennington
Gibson, Dunn & Crutcher LLP
Los Angeles, California

> *Attorneys for Defendants AG Edwards & Sons, Inc., BB&T Capital Markets, Citigroup Global Markets Inc., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus & Company, Inc.*