# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

In re THORNBURG MORTGAGE, INC.    )    CASE NO. CIV 07-815 JOB/WDS
SECURITIES LITIGATION    )
                                          )
                                          )

## OMNIBUS REPLY IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR A
## PARTIAL LIFTING OF THE PSLRA DISCOVERY STAY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii-iii

I.     INTRODUCTION ............................................................................................ 1

II.    THE AUTOMATIC STAY UNDER BANKRUPTCY CODE § 362(a)
       DOES NOT BAR OR PROHIBIT THE COURT FROM PARTIALLY
       LIFTING THE PSLRA DISCOVERY STAY ................................................. 3

       A.    The Bankruptcy Automatic Stay Does Not Extend to Non-Debtors ...... 4

       B.    Plaintiffs Will Seek The Requested TMI Documents Through
             The Bankruptcy Court ......................................................................... 5

III.   PLAINTIFFS ARE UNDULY PREJUDICED BY THE STAY ...................... 6

IV.    THE DISCOVERY REQUESTS ARE NOT BURDENSOME ....................... 7

V.     THE DOCUMENTS REQUESTED ARE RELEVANT TO PLAINTIFFS'
       CLAIMS ........................................................................................................ 8

       A.    Summary of Allegations in CAC ......................................................... 9

       B.    A Nexus Exists Between Plaintiffs' Case and Documents Removed By
             Defendants Goldstone and Simmons .................................................. 10

       C.    Defendants' Conduct Regarding Margin Calls Are At The Core Of
             Plaintiffs' Concealment Claims .......................................................... 12

VI.    THE REQUESTED DISCOVERY IS ADEQUATELY PARTICULARIZED ... 13

VII.   LIFTING THE PSLRA DISCOVERY STAY IS WARRANTED TO REMEDY
       DEFENDANTS' REMOVAL OF DOCUMENTS AND TO PRESERVE
       DISCOVERABLE EVIDENCE ..................................................................... 14

       A.    Evidence Already Has Been Removed From TMI ............................... 14

       B.    The Trustee May Not Be Able to Preserve All Discoverable Evidence ... 17

VIII.  CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,*
    244 F.R.D. 614 (D. Colo. 2007) ...............................................................................15

*Carson, et al., v. SemGroup,*
    slip op., 08-MD-1989-GKF-FHM (N.D. Okla. Feb. 18, 2009),
    *aff'd* No. 09-5028, slip op., (10th Cir. Apr. 24, 2009)..............................................7

*Hallmark Cards, Inc. v. Monitor Co. Group Ltd. Partnership,*
    No. 07-0357-CV-W-ODS, 2009 WL 4042776 (W.D. Mo. Nov. 20, 2009).......................15, 16

*In re 3901 Foods, LLC,*
    No. 09-06772-8-JRL, 2009 WL 2982774 (Bankr. E.D.N.C. Sept. 10, 2009) ...........................4

*In re Am Funds Sec. Litig.,*
    493 F. Supp. 2d 1103 (C.D. Cal. 2007) ....................................................................14

*In re CFS-Related Sec. Fraud Litig.,*
    179 F. Supp. 2d 1260 (N.D. Okla. 2001)...................................................................17

*In re Delphi Corp. Sec. Derivative & ERISA Litig.,*
    Master Case No. 05-MD-1725,
    2007 U.S. Dist. LEXIS 10408 (E.D. Mich. Feb. 15, 2007).................................4, 7, 13

*In re Enron Corp.,*
    281 B.R. 836 (Bankr. S.D.N.Y. 2002)........................................................................4

*In re Enron Corp. Sec. Derivative & ERISA Litig.,*
    MDL No. 1446, 2002 U.S. Dist. LEXIS 26261 (S.D. Tex. Aug. 16, 2002) ...........................13

*In re Fannie Mae Sec. Litig.,*
    362 F. Supp. 2d 37 (D. D.C. 2005)...........................................................................13

*In re FirstEnergy Corp. Sec. Litig.,*
    229 F.R.D. 541 (N.D. Oh. Jan. 26, 2004)..................................................................13

*In re Hillsborough Holdings Corp.,*
    130 B.R. 603 (Bankr. M.D. Fla. 1991) .......................................................................5

*In re LaBranche Sec. Litig.,*
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) .....................................................................13

*In re Medical Management Group, Inc. that,*
    302 B.R. 112 (table), 2003 WL 21487310 (Bankr. 10th Cir. June 27, 2003) ...........................4

*In re Metropolitan Sec. Litig.,*
    No. CV-04-25-FVS, 2005 WL 940898 (E.D. Wash. March 31, 2005)....................................6

*In re Nat'l Century Fin. Enter., Inc. Fin. Inv. Litig.,*
    347 F. Supp. 2d 538 (S.D. Ohio 2004) ....................................................................18

*In re Richard B. Vance & Co.,*
    289 B.R. 692 (C.D. Ill. 2003) ..................................................................................5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
220 F.R.D. 246 (D. Md. 2004) .................................................................3, 14, 17

*In re Spectranetics Corp. Sec. Litig.*,
Civil Action No. 08-cv-2048 REB-KLM, 2009 WL 3346611 (D. Colo. 2009) ................13, 14

*In re Tyco International, Ltd. Sec. Litig.*,
MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659 (D. N.H. July 27, 2000) ...............16

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 129 (S.D.N.Y. 2003) ...........................................................14

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...........................................................7, 13

*Matter of Provincetown Boston Airline, Inc.*,
52 B.R. 620 (Bankr. Fla. 1985) ...............................................................5, 6

*U.S. v. Board of County Com'rs of the County of Dona Ana*, No.
CIV 08-0501 JB/ACT, 2009 WL 2426194 (D.N.M. July 20, 2009).........................................7

*Zubulake v. UBS Warburg, LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ...............................................................15

**Statutes**

11 U.S.C.
§ 362 ...........................................................................................4
§ 362(a) .......................................................................................2
§ 362(d) .......................................................................................5

15 U.S.C.
§ 78j(b) .......................................................................................12
§ 78t(a) .......................................................................................12
§ 78u-4(b)(3)(B) .........................................................................1, 2, 3, 4
§ 78u-4(b)(3)(C)(i) ......................................................................15, 17

**Other Authorities**

Senate Rep. No. 989, 95th Cong., 2nd Sess., 50,
Reprinted in (1978) U.S. Code Cong. & Ad. News 5836 .........................................5

Lead Plaintiffs, W. Allen Gage, individually and on behalf of J. David Wrather, Harry Rhodes, FFF Investments, LLC, Robert Ippolito, individually and as Trustee for the Family Limited Partnership Trust, and Nicholas F. Aldrich, Sr., individually and on behalf of the Aldrich Family, and Plaintiffs Betty L. Manning and John Learch (collectively, and on behalf of all others similarly situated, "Plaintiffs"), respectfully submit this Omnibus Reply in further support of their motion to partially modify the discovery stay provided under section 21D(b)(3) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B) ("the Motion") and in response to: (i) the Opposition of Joel I. Sher, Chapter 11 Trustee for TMST, Inc. f/k/a Thornburg Mortgage, Inc. *et. al.* ("Trustee Opp."); (ii) Defendants Goldstone and Simmons's Opposition ("G/S Opp."); and (iii) the Response by Certain D&O Defendants to the Motion ("D& O Opp.") (collectively the "Responses" or "Respondents").[1]

## I.    INTRODUCTION

Plaintiffs seek only a partial modification of the PSLRA discovery stay provisions for three limited purposes: (1) to recover relevant documents, computers and other materials removed from TMI by Defendants Simmons and Goldstone; (2) to obtain documents produced by TMI and/or the Individual Defendants to the Securities & Exchange Commission ("SEC") and the New York Stock Exchange ("NYSE") and produced by TMI and/or the Individual Defendants (as well as certain third parties) to the Committee of Unsecured Creditors ("UCC")

---

[1]    The "D&O Defendants" are Defendants Anne-Drue M. Anderson ("Anderson"), David A. Ater, Joseph H. Badal, Eliot R. Cutler, Paul G. Decoff, Ike Kalangis, Francis I. Mullin, III, Stuart C. Sherman and Garrett Thornburg.  For the sake of simplicity, Debtor Defendant TMST, Inc. f/k/a Thornburg Mortgage, Inc. is identified herein as "TMI."  The "Individual Defendants" are defined as the D&O Defendants and Defendants Larry A. Goldstone ("Goldstone") and Clarence G. Simmons, III ("Simmons").  Defendant Goldstone previously served as TMI's Chief Executive Officer ("CEO") and was a Director of TMI. *See* Declaration of Mark A. Salzberg in Opposition to Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Discovery Stay ("Salzberg Decl.") ¶ 5.  Defendant Simmons was TMI's Chief Financial Officer ("CFO"). *Id.*  Both Defendants Goldstone and Simmons resigned from TMI on September 15, 2009. *Id.*

appointed in TMI's bankruptcy proceedings; and (3) to request "litigation hold" information from TMI and the Individual Defendants to determine what efforts have been undertaken to preserve discoverable evidence related to this case once litigation was reasonably anticipated.[2]

Lifting the PSLRA discovery stay to allow Plaintiffs to serve these limited discovery requests does not, as Defendants assert, conflict with the automatic stay provision under § 362(a) the Bankruptcy Code, 11 U.S.C. § 362(a). *See infra* § II. The Bankruptcy Code simply does not apply to the non-debtor Defendants. Even as to the lone debtor-Defendant, TMI, the stay of discovery under the Bankruptcy Code does not act as an automatic bar to discovery under the PSLRA. The statutes operate independently of one another. Accordingly, if the PSLRA stay is partially lifted, Plaintiffs will ask the Bankruptcy Court to determine whether cause exists to obtain the TMI documents from the Trustee. *See infra* § II.

Allowing Plaintiffs to conduct limited discovery here is necessary to prevent undue prejudice to Plaintiffs and the putative classes. 15 U.S.C. § 78u-4(b)(3)(B). Among the litany of interested parties, which include the SEC, NYSE, UCC and the Trustee, Plaintiffs and the putative classes are the *only* entities left without access to critical documents necessary to prosecute their claims. *See infra* § III. The Trustee, SEC, NYSE and UCC have superior access to TMI's relevant documents, as well as its limited assets. Thus, unless the PSLRA discovery stay is partially lifted, Plaintiffs and the putative classes will remain at an unfair disadvantage and will continue to be unduly prejudiced. *Id.*

---

[2]     *See* Memorandum of Law in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Discovery Stay ("Mem.") at 3-4. In the Motion, Plaintiffs also asked the Court to issue document preservation subpoenas and requests to select third parties. *Id.* On December 1, 2009, a stipulation was filed with the Court which withdrew this request for relief and limited the "litigation hold" request to TMI and the Individual Defendants. [Dkt No. 238]. Based on this stipulation, the Underwriter Defendants take no position on the Motion. *Id.* As the request for document preservation subpoenas to third parties and to the Underwriter Defendants has been resolved, Plaintiffs will not address the arguments of the Trustee as to this request. *See* Trustee Opp. at 7.

The limited and narrowly focused discovery Plaintiffs seek here is not unduly burdensome. *See infra* § IV. The three requests are highly particularized, narrowly focused in scope, and target readily available and identifiable relevant documents that have either: (a) already been produced to certain third parties, or (b) have already been removed from TMI by Defendants Goldstone and Simmons. Mem. at 5-9. Plaintiffs essentially seek access to a limited number of relevant and readily accessible documents. *See infra* §§ V, VI.

Plaintiffs also have demonstrated, and the Respondents fail to address adequately, that a partial lifting of the PSLRA discovery stay for this highly particularized discovery "is necessary to preserve evidence." 15 U.S.C. § 78u-4(b)(3)(B); *see infra* § VII. Again, there is no dispute that Defendants Goldstone and Simmons already removed relevant documents from TMI. The potential for the continued loss or destruction of relevant TMI documents from 2007 and 2008 continues especially when a busy Trustee, with admittedly limited resources and a "skeleton crew," is highly focused on monetizing current assets for creditors rather than retaining relevant documents for this shareholder class action. Trustee Opp. at 6. Here, "faced with a shifting corporate landscape and concerns about evidentiary loss that are by no means 'wholly speculative' [citation omitted], the plaintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004). Instead, the PSLRA permits Plaintiffs, as they have requested in the Motion, "to seek discovery to aid their efforts to preserve evidence for themselves." *Id.*

## II. THE AUTOMATIC STAY UNDER BANKRUPTCY CODE § 362(a) DOES NOT BAR OR PROHIBIT THE COURT FROM PARTIALLY LIFTING THE PSLRA DISCOVERY STAY

There is no rule of law—either under the Bankruptcy Code or federal common law – prohibiting the Court from lifting the PSLRA discovery stay against the non-debtor or debtor

Defendants.[3] Plaintiffs recognize that TMI is subject to the automatic stay in TMI's pending Chapter 11 proceeding. Accordingly, should the Court grant the relief requested herein, Plaintiffs will seek appropriate relief from the automatic stay from the Bankruptcy Court to the extent an agreement with the Chapter 11 Trustee cannot be reached. Thus, the automatic stay provision under § 362 operates independently of this Court's determination to partially lift the PSLRA discovery stay – and does not bar this Court from partially lifting the discovery stay to permit Plaintiffs to seek the requested documents from TMI through the Bankruptcy Court. *See* 11 U.S.C. § 362; 15 U.S.C. § 78u-4(b)(3)(B); *see also* Trustee Opp. at 3-6; D&O Opp. at 11.

### A.    The Bankruptcy Automatic Stay Does Not Extend to Non-Debtors

As discussed in numerous submissions to the Court, the automatic stay provision under the Bankruptcy Code does not extend to the non-debtor Defendants including the D&O Defendants and Defendants Goldstone and Simmons. *See, e.g.,* Dkt No. 196, 206 and 212. Thus, the Court may properly lift the PSLRA discovery stay as to the non-debtors Defendants without reference to the authority of the Bankruptcy Court. Indeed, the United States Court of Appeals for the Tenth Circuit held in *In re Medical Management Group, Inc.* that, "[t]he stay in section 362(a) may not be invoked by nondebtors who are related to the Debtor in some way." *Id.,* 302 B.R. 112 (table), 2003 WL 21487310, at *6 (Bankr. 10th Cir. June 27, 2003). Therefore, any order from this Court requiring that the non-debtor Defendant, TMI, produce discovery would immediately be enforceable.[4] Accordingly, the Court has the authority to order:

---

[3]    The Motion is not an 'end run' around the Trustee or the Bankruptcy Court. Trustee Opp. at 6. Before Lead Plaintiffs can seek relief from the automatic stay in TMI's Chapter 11 proceeding, Plaintiffs must first obtain relief from the PSLRA stay of discovery. *See In re Delphi Corp. Sec. Derivative & ERISA Litig.,* Master Case No. 05-MD-1725, 2007 U.S. Dist. LEXIS 10408, at *7 n.8 (E.D. Mich. Feb. 15, 2007); *In re Enron Corp.,* 281 B.R. 836, 838 n.3 (Bankr. S.D.N.Y. 2002).

[4]    *See, e.g., In re 3901 Foods, LLC,* No. 09-06772-8-JRL, 2009 WL 2982774, at *1 (Bankr. E.D.N.C. Sept. 10, 2009) ("It is generally accepted that the automatic stay does not prohibit discovery pertaining to claims against a debtor's co-defendants, 'even if the discovery requires a response from the

(1) Defendants Goldstone and Simmons to produce a copy of the relevant documents removed from TMI; and (2) the Individual Defendants to produce a copy of any "litigation hold" materials in their possession as well as any documents produced to third parties such as the SEC, NYSE, and UCC.

### B. Plaintiffs Will Seek The Requested TMI Documents Through The Bankruptcy Court

As to the Debtor, Defendant TMI, Plaintiffs acknowledge, as the Trustee noted, that the Bankruptcy Court has jurisdiction over TMI's assets. Mem at 6 n.5; Trustee Opp. at 4. Thus, if the PSLRA stay is partially lifted by this Court, Plaintiffs will seek the requested documents from TMI through the Bankruptcy Court or by agreement with the Trustee. *See* 11 U.S.C. § 362(d). As Bankruptcy Courts around the country have held, plaintiffs may obtain discovery through the Bankruptcy Court because of "Congress' *clear intention* to allow previously filed actions to continue despite the automatic stay provisions of § 362(a)." *Matter of Provincetown Boston Airline, Inc.*, 52 B.R. 620, 623 (Bankr. Fla. 1985) (citing Senate Rep. No. 989, 95th Cong., 2nd Sess., 50, Reprinted in (1978) U.S. Code Cong. & Ad. News 5836) (emphasis added).

As the Court stated in *Matter of Provincetown*:

> Courts had no difficulty granting the relief for "cause" where the moving party either sought relief in order to liquidate in a non-bankruptcy forum an unliquidated claim against the debtor, or in order to proceed against a non-debtor in an action where the debtor would only be a nominal defendant, albeit, an indispensable party. This situation is present in suits where the claim against the Debtor is covered by insurance and the plaintiff merely seeks recovery against the insurance carrier who is actually defending the action. In such a situation, the Debtor's participation is nominal the suit does not pose a financial burden on the

---

debtor, and even if the information discovered could later be used against the debtor.'") (quoting *In re Richard B. Vance & Co.*, 289 B.R. 692 (C.D. Ill. 2003)); *In re Hillsborough Holdings Corp.*, 130 B.R. 603 (Bankr. M.D. Fla. 1991) (co-defendant granted relief from automatic stay to depose debtor's former and current employees). The D&O Defendants also concede (as they must) in their Opposition that the automatic bankruptcy stay "is in effect as to [TMI]" only. D&O Opp. at 11.

debtor and has no meaningful negative impact on the Debtor's efforts to effectuate
a reorganization.

*Id.*, 52 B.R. at 623. Thus, if an agreement cannot be reached with the Trustee, Plaintiffs will

petition the Bankruptcy Court for a limited lifting of the discovery stay there at the appropriate

time.

## III.   PLAINTIFFS ARE UNDULY PREJUDICED BY THE STAY

A limited modification of the PSLRA discovery stay is necessary to prevent unfair

treatment of Plaintiffs and the putative classes.  If Plaintiffs are not permitted to obtain: (1) a

copy of the relevant documents removed by Defendants Goldstone and Simmons; and (2) the

documents made available to the SEC, NYSE and UCC (all entities pursuing claims against the

limited resources of TMI in the Bankruptcy Court), Plaintiffs and the classes will be unfairly

prejudiced.  *See In re Metropolitan Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *3

(E.D. Wash. March 31, 2005) ("Plaintiffs may well be unfairly disadvantaged if they do not have

access to documents the governmental agencies and other civil claimants possess.").

Here, time uniquely is of the essence.  Each of these interested entities have been

pursuing their claims against TMI in the Bankruptcy Court for months – making likely the

unfortunate result that these entities will be able to investigate, litigate and conclude their

proceedings, and recover whatever limited assets of TMI they may, before Plaintiffs obtain a

single piece of discovery from Defendants if the PSLRA discovery stay is not now lifted.  In

addition, the newly appointed Trustee may decide to pursue claims against the Individual

Defendants, further reducing the size of the debtor's estate from which Plaintiffs and the classes

may recover.  *See* Trustee Opp. at 3 ("Trustee has already begun a forensic examination of the

Debtors' pre- and post-bankruptcy affairs to determine if there are causes of action that,

consistent with his statutory fiduciary duty, should be pursued.").  Thus, it is necessary for the

Court to lift the PSLRA discovery stay now to preclude such an inequitable result.

Tellingly, Respondents ignore the rationale behind the case law that permits this Court to partially modify the PSLRA discovery stay where, as here, a securities plaintiff has been placed at an unfair disadvantage by virtue of being "'the only major party without access to discovery'" in the unique circumstances of a bankruptcy. Mem. at 13-15; *see, e.g., Carson, et al., v. SemGroup,* slip op., 08-MD-1989-GKF-FHM, at 2 (N.D. Okla. Feb. 18, 2009), *aff'd* No. 09-5028, slip op., (10th Cir. Apr. 24, 2009) (modifying discovery stay to provide plaintiffs with access to discovery already produced in connection with concurrent civil and criminal proceedings); *In re WorldCom, Inc. Sec. Litig.,* 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002) (lifting discovery stay after finding plaintiffs would be unduly prejudiced if they did not receive documents already obtained by other entities); *Delphi,* 2007 U.S. Dist. LEXIS 10408, at *20-*21 (without discovery of documents already available to federal authorities and interested parties in the bankruptcy, plaintiffs are unfairly disadvantaged).

## IV.    THE DISCOVERY REQUESTS ARE NOT BURDENSOME

A request for documents already produced to a third party (such as the SEC) amounts to nothing more than the duplication of a computer disc or another set of hard copy documents. No Respondent argued (nor could it) that such a request would place an undue burden upon any party, as Plaintiffs are willing to pay for the costs of duplication. It is also important to note that claims of inconvenience or distraction by the Trustee, by themselves, do not render a request for documents unduly burdensome. *See U.S. v. Board of County Com'rs of the County of Dona Ana,* No. CIV 08-0501 JB/ACT, 2009 WL 2426194, at *10 (D.N.M. July 20, 2009) (To determine if a document request is unduly burdensome requires "a more detailed foundation to make a decision, such as having affidavits from computer experts on the nature and costs that would be

associated with compliance").

According to the Trustee, the requested production is burdensome only as to Plaintiffs' request for materials *yet to be produced* to the SEC, NYSE and UCC in connection with their respective investigations and proceedings. *See* Trustee Opp. at 6-8 (this request is a "continuing burden" which would "distract and interfere" with the Trustee's duties). Plaintiffs respectfully disagree; the mere duplication of documents which will be produced to third parties regardless of when such production is made places no undue burden on the Trustee's time or resources. The Trustee must already oversee the requested production to the SEC, NYSE and UCC. As such, permitting Plaintiffs to obtain another copy of any such production amounts to nothing more strenuous than burning another computer disc and/or allowing Plaintiffs to pay the costs of duplicating an additional set of documents. Plaintiffs' request also does not impose *any* additional burden on the Trustee's or TMI's limited resources because these resources are being utilized to comply with the demands of the original requesting parties, not Plaintiffs. D&O Opp. at 11. If the Trustee has concerns or objections about whether the requested production to the SEC, NYSE or UCC is unduly burdensome, this objection should be directed to these entities, not Plaintiffs. Thus, there is no additional or undue burden on the Trustee to produce documents to Plaintiffs here.

## V.    THE DOCUMENTS REQUESTED ARE RELEVANT TO PLAINTIFFS' CLAIMS

Plaintiffs have demonstrated that potentially relevant documents with a nexus to their claims were removed by Defendants Goldstone and Simmons from TMI[5] and that documents

---

[5]    The Trustee admits that Judge Keir found that Defendants Goldstone and Simmons removed from TMI "approximately forty (40) boxes of unknown content (presumably documents of the Debtors) and two laptops computers" and that he has only "begun the process of retrieving the documents and computers taken." Trustee Opp. at 2-3. Despite his lack of information about the materials removed, the Trustee argues that Plaintiffs must show that these documents are relevant to their claims or have a 'nexus' to events at issue. *Id.* at 2-3 and 9-10. Unfortunately, because the contents of the boxes and

8

sought by the UCC are directly, not "only tangentially," related to Plaintiffs' allegations. *Contra* Trustee Opp. at 9-10 (no nexus); D&O Opp. at 10 ("only tangentially related"). A brief review of the allegations in Plaintiffs' Consolidated Class Action Complaint ("CAC") illustrates the relationship between the requested documents and Plaintiffs' claims.

## A.    Summary of Allegations in CAC

Plaintiffs alleged that TMI misrepresented its exposure to the deteriorating mortgage market during the relevant period, instead reiterating TMI's stringent underwriting standards and commitment to invest exclusively in "high quality" mortgage-related assets. ¶¶ 77, 79, 213.[6] TMI went so far as to indicate that it may benefit from the mortgage crisis due to a reduction in competition. ¶¶ 115, 249. As the mortgage market continued its collapse, however, the value of TMI's undisclosed, high-risk Alternative-A ("Alt-A") mortgage-related assets declined markedly, prompting its lenders to issue margin calls and requiring the sale of billions of dollars in mortgage assets. Nevertheless, Defendants made a series of false and misleading statements during this time, concealing TMI's financial instability, including:

- On August 14, 2007, Defendants publicly announced that Thornburg was "exploring" a "potential" sale of assets due to liquidity concerns. ¶¶ 135, 273-74. In truth, TMI had already liquidated $22 billion worth of its highest-rated assets, the equivalent of 35% of the Company's portfolio, and concealed that TMI held billions of dollars of Alt-A mortgages and Mortgage Backed Securities ("MBS"). ¶¶ 18, 84, 109-135, 137-38, 143, 279, 434. Defendant Goldstone attempted to spin the news by stating that "the liquidity issues in the market place today, are creating a very, very nice opportunity for us." ¶ 115.

- On February 28, 2008, Defendants revealed that TMI had been subject to $300

---

laptops were never copied or inventoried by TMI prior to their release, and have not been inventoried and copied to date by the Trustee after their removal, other than, perhaps, by Defendants Goldstone and Simmons and/or their counsel, no one, including the Trustee, can identify all of the documents removed from TMI. *See* G/S Opp. at 3-5 (¶¶ 7-9, 11). Notwithstanding the foregoing, Plaintiffs believe that there is sufficient evidence to demonstrate a nexus between the misappropriated documents and Plaintiffs' claims, as discussed below.

[6]    For the convenience of the Court, all citations in the format "¶__" denote references to paragraphs in the CAC.

million in margin calls on $2.9 billion of MBS collateralizing its Reverse Purchase Agreements ("RPAs") – all of which were backed by Alt-A assets. *See* ¶¶ 161-70. TMI lost 15% of its share value in response to this disclosure, in the space of one day. ¶¶ 24, 370. However, Defendants concealed the entire truth by falsely stating that Thornburg had "met" all of outstanding margin calls to date when, in reality, they had not. As of February 28, 2008, J.P. Morgan had notified TMI that it was in default on a $320 million RPA, after failing to meet an earlier $28 million margin call. ¶¶ 162-70. The J.P. Morgan default also simultaneously triggered cross-default clauses in all of its outstanding RPAs, allowing each RPA holder to immediately accelerate Thornburg's obligations under those agreements. *Id.*

- On March 3, 2008, Defendants falsely stated that "the lender has not yet exercised its right to liquidate pledged collateral," and "[t]o the extent that any other [RPA] contains a cross default provision, the related lender ... ***could*** declare an event of default at any time." ¶ 372 (emphasis added). In reality, J.P. Morgan had already notified the Company in its February 28, 2008 letter that it intended to exercise its rights under the agreement and simultaneously triggered cross-default provisions under all of Thornburg's remaining RPAs. ¶¶ 171-72, 377, 382.

Between March 11, 2008 and March 19, 2008, Defendants disclosed, *inter alia*, that TMI's impairment charge ***was actually*** $676.6 million, notwithstanding Defendants' one month-old proclamation that the Company had "return[ed] to profitability." ¶¶ 35-39. TMI announced that it had entered into a bailout agreement with five of its remaining lenders to obtain approximately $5.8 billion in financing. *Id.* When the full truth of Defendants' deception and precarious financial health came to light, the damage to investors was done: during the relevant period, TMI's common stock price plummeted from a high closing price of $28.11 on June 4, 2007, to a closing price of just $1.50 per share on March 19, 2008 – ***a 95 percent drop in value***. *See* ¶¶ 406, 411-12. It was this deception that precipitated Thornburg's subsequent Chapter 11 petition.

### B.     A Nexus Exists Between Plaintiffs' Case and Documents Removed By Defendants Goldstone and Simmons

A substantial nexus exists between the materials misappropriated from TMI (Defendant Simmons' board books and Defendants Goldstone's and Simmons' TMI and Thornburg Mortgage Advisory Corporation ("TMAC") employment related materials) and the events at

issue in this action. G/S Opp. at 3 (¶ 7) (materials removed included TMI employment and TMAC materials); Declaration of Richard A. Russo, Jr. in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Stay of Discovery ("Russo Decl."), Ex. 2 at 5 (Simmons asked to take board books).

First, according to D&O Defendant Anderson, the current TMI President and Treasurer, the documents removed by Defendant Simmons included board books with his personal notes, which he purportedly needed in order to prepare for a SEC deposition. Russo Decl., Ex. 2 at 5 ("Mr. Simmons also asked to take board books containing his personal notes so that he could prepare for an upcoming deposition in the [SEC's] investigation of [TMI];" Ms. Anderson told Mr. Simmons, "he could do that."). According to TMI's SEC filing on Form 10-Q ("10-Q") for the quarterly period ended September 30, 2008, the SEC investigation related to "the statement of [TMI's] Consolidated Financial Statements for fiscal year 2007, margin calls that [TMI] received (or which were threatened) pursuant to its Reverse Repurchase Agreements and related disclosures, and the valuation, impairment and/or disclosures concerning the accounting treatment for [TMI's] mortgage-backed securities addressed in the restatement" – the very issues at the heart of Plaintiffs' case. *See* Supplemental Declaration of Richard A. Russo, Jr. in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Stay of Discovery ("Suppl. Russo Decl."), Ex. 8, filed concurrently herewith. As Defendant Simmons needed the misappropriated documents to prepare for a deposition in a matter involving the same issues that exist here, the documents are no doubt relevant to this case. As such, these documents certainly are "pertinent to the core allegations of Plaintiffs' securities claims." Trustee Opp. at 2, 10.

Second, Defendants Goldstone and Simmons admit in their Response that they removed "copies of material related to their employment as executives at Thornburg Mortgage and

11

material related to other entities, other than TMST, such as Thornburg Mortgage Advisory Corporation ("TMAC"), an entity that provided management services" to TMI. G/S Opp. at 3-4 (¶ 7). Materials related to their employment as TMI's CEO and CFO, as well as the nature of their relationship with and benefits received from TMAC, are central to Plaintiffs' scienter allegations in support of their Exchange Act claims. Specifically, TMAC received a monthly management fee based on TMI's "Average Historical Equity," defined as "the difference between total assets and total liabilities of [TMI] calculated on a consolidated basis each month." ¶ 194. Defendant Goldstone therefore maintained a financial interest in TMAC's management fee, and thus had a clear motive to accumulate high-risk Alt-A backed assets and securities throughout the relevant period, in an effort to maximize the amount of this fee. ¶¶ 193-97. Thus, the TMAC documents removed by Defendants Goldstone and Simmons are relevant to the issue of their personal financial motive to conceal TMI's true Alt-A exposure, and to overvalue TMI's mortgage-related assets. As such, these documents bear a direct and substantial "nexus" to the events at issue in this action.

## C. Defendants' Conduct Regarding Margin Calls Are At The Core Of Plaintiffs' Concealment Claims

As summarized above, the core of Plaintiffs' claims under the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) in this action involves TMI's concealment of its high-risk mortgage portfolio by downplaying or concealing the timing and effect of margins calls issued due to the devaluation of these high-risk assets. This includes the very same discovery sought by the UCC in the bankruptcy proceedings – for instance, discovery regarding the role that margin calls from certain institutions may have played in allegedly causing TMI's bankruptcy. For this reason, the timing of the margin calls and the triggering of the cross-default provisions under all of TMI's remaining RPAs goes to the heart of Plaintiffs' fraud claims. *See* ¶¶ 109-172. In fact, even the

D&O Defendants concede that these documents "are related to the present litigation." D&O

Opp. at 10.

## VI.    THE REQUESTED DISCOVERY IS ADEQUATELY PARTICULARIZED

Plaintiffs' requests are amply particularized and discrete as they are limited to:

(1)    documents produced by TMI and/or the Individual Defendants to the SEC and NYSE;

(2)    documents produced by TMI, the Individual Defendants and/or certain third parties to the UCC;

(3)    documents that were removed by Defendants Goldstone and Simmons from TMI; and

(4)    "litigation hold" documents of TMI and the Individual Defendants.

*See* Trustee Opp. at 8-9. Courts have held that similar limited requests satisfy the particularity

requirement for lifting the PSLRA discovery stay.[7]

The cases cited by the Trustee on the particularity requirement do not hold otherwise and

are inapposite. For example, *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D. D.C.

2005), turned on relevance, not particularity, as plaintiffs' counsel in that case "conceded that not

all of the documents produced to the various agencies would be relevant to th[e] litigation."

Trustee Opp. at 9. As noted herein, Plaintiffs have established that the requested documents are

relevant. *See* Mem. at 4-8. Likewise, in *In re Spectranetics Corp. Sec. Litig.*, Civil Action No.

---

[7]    *See WorldCom*, 234 F. Supp. 2d at 306 (finding plaintiffs' request for a clearly defined universe of documents "which WorldCom ha[d] already produced in connection with other identified proceedings" satisfied particularity requirement); *Delphi*, 2007 U.S. Dist LEXIS 10408, at *14-18 (request sufficiently particularized when limited to documents produced to investigators and government authorities); *In re Enron Corp. Sec. Derivative & ERISA Litig.*, MDL No. 1446, 2002 U.S. Dist. LEXIS 26261, at *32 (S.D. Tex. Aug. 16, 2002) ("In a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse."); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Oh. Jan. 26, 2004) (request sufficiently particularized where limited to "closed universe of materials" that defendant already produced to government investigators and federal grand jury); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) ("Courts have modified the discovery stay in other securities class actions involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA.").

08-cv-2048 REB-KLM, 2009 WL 3346611, at *3 (D. Colo. 2009), the court denied the plaintiffs' request to modify the PSLRA discovery stay because it was unable to determine that the plaintiffs' requests to obtain documents and materials provided to five different government agencies, including the Food & Drug Administration, Immigration & Custom Enforcements, the SEC, the Financial Industry Regulating Authority ("FINRA") and Department of Labor ("DOL"), were all relevant to the plaintiffs' claims. Trustee Opp. at 9. In addition, the DOL had dismissed its case against the company; and the SEC and FINRA were not actively investigating the company. *Id.*

As discussed above, relevance is not at issue here as the SEC investigation essentially is focused on the same allegations made in the CAC, and remains on-going. Suppl. Russo Decl., Ex. 8. Specifically, the SEC is focused on TMI's financial statements in 2007, margin calls made pursuant to the RPAs, and the valuation, impairment and disclosures concerning TMI's treatment of MBS – all the events underlying Plaintiffs' allegations. *See infra* §§ V.A. and V.C. Thus, the request for documents produced in the course of the SEC's investigation of these events at TMI are discrete and adequately particularized.[8]

## VII. LIFTING THE PSLRA DISCOVERY STAY IS WARRANTED TO REMEDY DEFENDANTS' REMOVAL OF DOCUMENTS AND TO PRESERVE DISCOVERABLE EVIDENCE

### A. Evidence Already Has Been Removed From TMI

Respondents *concede* that documents were removed by Defendants Goldstone and

---

[8]    The other cases relied upon by the Trustee actually support Lead Plaintiffs' position that a partial lifting of the discovery stay is warranted in the unique circumstances of a corporate bankruptcy. Trustee Opp. at 9. *See In re Am Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007) (Plaintiffs' case is distinguishable because it does not "involve unique circumstances, such as ongoing settlement discussions or corporate bankruptcies, that would have led to the plaintiffs being unduly prejudiced if the PSLRA discovery stay had not been lifted."); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (there are no 'exceptional circumstances' because there is "no evidence that plaintiffs . . . would be left without remedy" in light of other intervening events such as a bankruptcy.); *Royal Ahold N.V.*, 220 F.R.D. at 250 (granting plaintiffs' motion to lift PSLRA stay, after concluding that plaintiffs' request was sufficiently particularized, given the complexity of the dispute).

Simmons and that, for this reason (among others), a Trustee was appointed. Trustee Opp. at 2-3; D&O Opp. at 5; G/S Opp. at 3-4 (¶ 7-9). These documents included forty (40) boxes of documents and laptop computers. TMI retained no inventory of the documents taken and the files contained on the laptops.

Notwithstanding this concession, the D&O Defendants aver that the PSLRA discovery stay should not be lifted because they were not involved in the potential destruction and/or removal of documents. *See* D&O Opp. at 5 ("D&O Defendants had no involvement in the removal of materials from [TMI]."). However, Plaintiffs need not demonstrate that each Defendant personally lost or destroyed discoverable evidence in order to meet their burden for modifying the PSLRA discovery stay. Rather, Plaintiffs are only required to show that this conduct occurred, as it did, while the evidence was in these Defendants' "custody or control." *See* 15 U.S.C. § 78u-4(b)(3(C)(i) (parties must preserve evidence in "custody or control" of that party).

Indeed, the statutorily mandated "litigation hold" under the PSLRA imposes a duty on *any* party to a securities class action with notice of the allegations contained in a complaint to preserve all discoverable evidence in the custody or control of that party. *See* 15 U.S.C. § 78u-4(b)(3)(C)(i). This duty to preserve discoverable evidence "extends to those employees likely to have relevant information – the 'key players' in the case" and would certainly include TMI's CFO and CEO. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 629 (D. Colo. 2007) (citing *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (practice of expunging hard drives of former employees after litigation was commenced violated Defendants' obligation to preserve evidence)); *see also Hallmark Cards, Inc. v. Monitor Co. Group Ltd. Partnership,* No. 07-0357-CV-W-ODS, 2009 WL 4042776, at *3 (W.D. Mo. Nov.

15

20, 2009) (Defendants violated an injunction by failing to take appropriate steps to prevent a former employee from removing laptop and documents when she left). Here, the duty extends equally to **all** of the D&O Defendants, and they are responsible for allowing Defendants Goldstone and Simmons to remove evidence from TMI on their watch.

Along with other misconduct, Defendant Anderson admitted that Defendant Simmons was "allowed" to remove TMI board books with his personal notes while subject to the preservation provision of the PSLRA.[9] Russo Decl., Ex. 2 at 5. These facts amount to a clear showing that the parties have **not** complied with their duty to preserve evidence within their custody and control arising out of the document preservation obligations under the PSLRA. *See* D&O Opp. at 7 (no "showing that they have failed to" comply with obligations).

Furthermore, although the D&O Defendants reference five document retention notices that were directed to all employees, it has been found that at least two key Defendants, namely TMI's CEO and CFO, patently ignored the notices and failed to comply with their document preservation obligations. D&O Opp. at 2, 5, 7. This conduct is not simply a "single event concerning but two of the numerous defendants," as Defendants contend. *Id.* at 5. Rather, all of the D&O Defendants allowed the wholesale removal of 40 boxes of relevant documents and two laptop computers from TMI by the Company's former CEO and CFO, who were the key perpetrators of the conduct alleged in this action. *Id.*

In light of Defendants Goldstone's and Simmons' actions, and the D&O Defendants' inaction, there is ample reason "to doubt that the notices were transmitted, reviewed and taken seriously by all who might have relevant documents," and that documents in the custody and

---

[9]    Congress imposed a preservation provision "in recognition that 'the imposition of stay of discovery may increase the likelihood that relevant evidence may be lost.'" *In re Tyco International, Ltd. Sec. Litig.,* MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659, at *4 (D. N.H. July 27, 2000) (citation omitted).

control of D&O Defendants were removed – even with permission. D&O Opp. at 6.[10]

## B. The Trustee May Not Be Able to Preserve All Discoverable Evidence

The Respondents all argue that because a Trustee has been appointed, there is "no risk" for "future spoliation of relevant evidence" and Plaintiffs "should recognize and find comfort in the fact that the Bankruptcy Court acted promptly to ensure that spoliation will not occur." Trustee Opp. at 3-4. *See also* D&O Opp. at 6; G/S Opp. at 3 (¶ 6). As an initial matter, where, as here, the corporate landscape shifts as the result of liquidation, and concerns about evidentiary loss are more than speculative, Plaintiffs are "not required to rely on the assurances of counsel that . . . evidence will be preserved." *Royal Ahold*, 220 F.R.D. at 251. In addition, Defendants' contention that there is "no risk" of spoliation now that the Trustee is involved is incorrect.

First, although the Trustee states that he "has begun the process of retrieving the documents and computers taken from [TMI]," no party can, or has, affirmatively attested that the documents returned to the Trustee comprise *the entirety* of the documents misappropriated, or that other documents have not disappeared. Trustee Opp. at 3. Nor do the Trustee's best efforts provide any real guarantee that Defendants Goldstone and Simmons will not destroy documents on the laptops they were permitted to retain. In short, the Trustee's efforts to retrieve the misappropriated documents, though noble, do little to mitigate the very real concern that discoverable evidence already has been lost as a result of the document misappropriation and/or will not adequately be preserved as a result of Defendants Goldstone and Simmons being

---

[10] *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) is inapplicable. Trustee Opp. at 12. In *CFS*, the court rejected the plaintiffs' argument that "the fading memory of witnesses" justified a lifting of the PSLRA discovery stay, noting that such circumstances were inherent in all litigation. *Id.* at 1264-65. Distinctively, here, the unauthorized removal of 40 boxes of corporate documents by TMI's former CFO and CEO while subject to a duty to preserve all relevant documents under 15 U.S.C. §78u-4(b)(3)(C)(i) is not inherent in all litigation and militates in favor of granting Plaintiffs' request for a limited modification of the PSLRA discovery stay.

permitted to retain the computer laptops.[11]

Second, the Trustee understandably is focused on his particularized duty "to manage[e] [TMI] and monetiz[e] its assets for creditors" – all "with a skeleton crew of personnel" – and not on the retention of documents relevant to this action. Trustee Opp. at 3, 6. As a result, discoverable evidence from 2007 onward is not his primary concern, and therefore may not adequately be preserved. In fact, the Trustee has offered no reassurances that a "litigation hold" is in place, and has described no system, whatsoever, to maintain relevant documents at TMI. Trustee Opp. at 6-7. With an admittedly busy Trustee focused on the interests of creditors, who is not inclined to spend the estate's limited resources to locate relevant documents, the need for the preservation of evidence remains strong. *See, e.g., In re Nat'l Century Fin. Enter., Inc. Fin. Inv. Litig.*, 347 F. Supp. 2d 538, 541 (S.D. Ohio 2004) (holding that non-party's liquidation raised a "real danger that documents may be lost if not preserved").

Third, under the Stipulation between the Trustee and Defendants Goldstone and Simmons, certain materials taken from TMI – employment documents for Defendants Goldstone and Simmons and material related to their involvement in TMAC – may not be preserved by the Trustee at all, and could instead be returned to Defendants Goldstone and Simmons as personal items. *See* G/S Opp., Ex. C at 4 (¶ 5) ("…the Trustee agrees to immediately release such item of personal or other property to Goldstone and/or Simmons.").[12] As a result of that same Stipulation, there also exists the possibility that discoverable evidence may not be produced at all

---

[11]    As the foregoing demonstrates, the findings by Judge Keir are not "wholly speculative assertions as to the risk of losing evidence," as the Trustee claims, and support the Court's exercise of its discretion to lift the PSLRA discovery stay. *See* Mem. at 10-13; Trustee Opp. at 10.

[12]    If Defendants Goldstone's and Simmons' assertions that these items "do not constitute property of the [TMI] bankruptcy estate" are correct then any discovery order as to these documents is immediately enforceable as these materials are not covered by the automatic stay. *See infra* § II.A. Nevertheless, a determination that such materials fall outside the property of TMI's bankruptcy estate only underscores the limited power of the Trustee to preserve this relevant evidence. G/S Opp. at 3 (¶ 7).

to the Trustee if they are considered privileged by Defendants Goldstone and/or Simmons. Salzberg Decl., at ¶ 17 ("Messrs. Goldstone and Simmons ... have provided the Trustee with a privilege log detailing privileged items retained by undersigned counsel."). Based on the conduct of Defendants Goldstone and Simmons in removing documents, the positions taken by Defendants Goldstone and Simmons as to the return of this material, and the Trustee's acceptance of Goldstone's and Simmons' terms, the risk of the loss of relevant evidence is real.

Finally, the Bankruptcy Court's determination that documents were removed, along with Plaintiffs' well-founded concerns that evidence may not adequately be preserved due to a shifting corporate landscape and a busy Trustee with limited resources, is sufficient to warrant a partial modification of the PSLRA discovery stay. Russo Decl., Ex. 3 at 88-92. Importantly, Plaintiffs' Motion would impose *no* additional burden on the Trustee or any of the Defendants beyond that which already has been imposed, and to which Defendants Goldstone and Simmons have already consented. *See* G/S Opp. at 4 (¶¶ 8, 9). Absent immediate modification of the PSLRA stay, this critical evidence -- the complete contents of which are known currently only to Defendants Goldstone and Simmons -- may not be preserved properly causing Plaintiffs to suffer immediate and irreparable harm.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Court grant the Motion to Partially Modify the PSLRA Stay of Discovery in its entirety.

Dated: December 18, 2009                    Respectfully submitted,

BRANCH LAW FIRM
Turner W. Branch
2025 Rio Grande Blvd. NW
Albuquerque, New Mexico 87104
Tel: 505-0243-3500
Fax: 505-246-3534
*Liaison Counsel for Lead Plaintiffs*

19

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Francis M. Gregorek, *admitted pro hac vice*
Betsy Manifold, *admitted pro hac vice*
Patrick H. Moran, *admitted pro hac vice*
750 B Street, Suite 2770
San Diego, CA 92101
Tel: 619-239-4599
Fax: 619-234-4599

**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK, LLP**
Andrew L. Zivitz, *admitted pro hac vice*
Benjamin J. Sweet, *admitted pro hac vice*
Michelle M. Newcomer, *admitted pro hac vice*
Richard A. Russo, Jr., *admitted pro hac vice*
280 King of Prussia Road
Radnor, Pa 19096
Tel: (610) 667-7706
Fax: (610) 667-7056

*Co-Lead Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 18 2009 the foregoing OMNIBUS

REPLY IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR A PARTIAL LIFTING OF

THE PSLRA DISCOVERY STAY was electronically filed with the Clerk of the Court using the

CMIECF System, which will send notification of such filing to all counsel of record and

declarant served the parties who are not registered participants of the CM/ECF System, via

United States Mail.

Turner W. Branch, Esq.

20

COUNSEL FOR PLAINTIFFS

Francis M. Gregorek
Rachele R. Rickert
Patrick Moran
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
      619/239-4599
      619/234-4599 (fax)
gregorek@whafh.com
rickert@whafh.com

Fred T. Isquith
Gregory M. Nespole
Rachel S. Poplock
Martin E. Restituyo
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
      212/545-4600
      212/545-4653 (fax)
isquith@whafh.com
nespole@whafh.com
poplock@whafh.com
restituyo@whafh.com

Turner W. Branch
BRANCH LAW FIRM
2025 Rio Grande Blvd. NW
Albuquerque, NM 87104
      505/243-3500
      505/243-3534 (fax)
tbranch@branchlawfirm.com

Shane C. Youtz
900 Gold Avenue, SW
Albuquerque, NM 87102
      505/244-1200
shane@youtzvaldez.com

\* Frederick S. Fox
Aviah Cohen Pierson
KAPLAN FOX & KILSHEIMER
850 Third Avenue
New York, NY 10022
      212/687-1980
      212/687-7714 (fax)

Charlotte Itoh
Cody Kelley
KELLEY LAW OFFICES
315 Fifth Street, NW
Albuquerque, NM 87102-2105
      505/796-8920
      505/843-9125 (fax)
citoh@ckelleylaw.com
ckelley_nmlaw@yahoo.com

Andrew Zivitz
Benjamin J. Sweet
Michelle M. Newcomer
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
      610/667-7056
      610/667-7706 (fax)
azivitz@sbtklaw.com
bsweet@sbtklaw.com
mnewcomer@sbtklaw.cm

Aaron L. Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
      212/687-7230
abrody@sswbny.com

Gregg Vance Fallick
201 third Street NW #1560
Albuquerque, NM 87102
      505/842-6000
gvf@fallicklaw.com
COUNSEL FOR PLAINTIFFS

All Parties served via ECM/ECF
\* Denotes service via U.S. Mail

\*  Samuel P. Sporn
Joel P. Laitman
Daniel B. Rehns
Jay P. Saltzman
SCHOENGOLD SPORN LAITMAN
  & LOMETTI, PC
19 Fulton Street, Suite 406
New York, NY 10038
    212/964-0046

\*  Richard A. Lockridge
Nathan D. Prosser
Karen H. Riebel
LOCKRIDGE GINDAL NAUEN
  && HOLSTEIN
100 Washington Avenue South
Washington Square Bldg., #2200
Minneapolis, MN 55401
    612/339-6900
    612/339-0981 (fax)

Nancy Kaboolian
ABBEY SPANIER RODD
  ABRAMS & PARADIS, LLP
212 East 39th Street
New York, NY 10016
    212/889-3700
    212/684-5191 (fax)
nkaboolian@abbeygardy.com

Curtis V. Trinko
LAW OFFICES OF CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
    212/490-9550
    212/986-0158 (fax)
ctrinko@trinko.com

Evan J. Smith
BRODSKY & SMITH, L.L.C.
240 Mineola Blvd.
Mineola, NY 11501
    516/741-4977
    516/741-0626 (fax)
esmith@brodsky-smith.com

\*  David R. Scott
SCOTT + SCOTT, LLC
108 Norwich Avenue
Colchester, CT 06415
    860/537-3818
    860/537-4432 (fax)

\*  Arthur Shingler, III
SCOTT + SCOTT, LLP
600 B Street, Suite 1500
San Diego, CA 92101
    619/233-4565
    610/233-0508 (fax)

COUNSEL FOR DEFENDANTS

David F. Cunningham
THOMPSON, HICKEY, CUNNINGHAM,
  CLOW & APRIL, P.A.
460 St. Michael's Drive
Sante Fe, NM 87501
    505/988-2900
    505/988-2901 (fax)
dfc@catchlaw.com

Frank T. Herdman
RUBIN KATZ LAW FIRM PC
123 E. Marcy St., Suite 200
Sante Fe, NM 87501
    505/982-3610
    505/988-1286 (fax)
fherdman@rubinkatzlaw.com

All Parties served via ECM/ECF
\* Denotes service via U.S. Mail

COUNSEL FOR DEFENDANTS

John S. Thal
Clifford K. Atkinson
ATKINSON & THAL, P.C.
201 Third Street, N.W., Suite 1850
Albuquerque, NM 87102
        505/764-8111
john@atkinson-thal.com
cliff@atkinson-thal.com

David C. Bohan
David J. Stagman
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street, Suite 1900
Chicago, IL
        312/902-5399

Counsel for Defendants UBS Securities
LLC and Bear, Stearns & Co., Inc.

*   Howard W. Gutman
    Steven M. Farina
    WILLIAMS & CONNOLLY LLP
    725 12th Street N.W.
    Washington, D.C. 20005
            202/434-5000
            202/434-5029 (fax)
    hgutman@wc.com

Robert Badal
WILMER CUTLER PICKERING HALE
  AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
        213/443-5300
        213/443-5400 (fax)
robert.badal@wilmerhale.com

William H. Forman
OVERLAND BORENSTEIN SCHEPER
  & KIM LLP
One Bunker Hill
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
        213/613-4655
        213/613-4656 (fax)
wforman@obsklaw.com

All Parties served via ECM/ECF
* Denotes service via U.S. Mail