**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **IN RE THORNBURG MORTGAGE, INC. IN THE UNITED STATES DISTRICT COURT DISTRICT OF NEW MEXICO SECURITIES LITIGATION** | Case No. 1:07-cv-00815-JB/WDS |

**UNDERWRITER DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLARIFICATION OF THE COURT'S JANUARY 27, 2010 MEMORANDUM OPINIONS AND ORDERS GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

ATKINSON, THAL & BAKER, P.C.
Albuquerque Plaza
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Telephone: (505) 764-8111
Facsimile: (505) 764-8374

*Attorneys for Defendants A.G. Edwards & Sons, Inc., BB&T Capital Markets, a division of Scott & Stringfellow, Inc., Bear, Stearns & Co. Inc. (now J.P. Morgan Securities Inc.), Citigroup Global Markets, Inc., FBR Capital Markets & Co., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus & Company, Incorporated, and UBS Securities LLC*

Dated: February 18, 2010

**TABLE OF CONTENTS**


BACKGROUND ..... 2

ARGUMENT ..... 3

I. Lead Plaintiffs' Motion Is One for Reconsideration ..... 3

- A. Despite Its Styling, Lead Plaintiffs' Motion Is Not One for Clarification. ..... 4
- B. Lead Plaintiffs' Motion Is Not One for Leave To File an Amended Complaint. ..... 5
- C. Lead Plaintiffs' Motion Constitutes a Motion for Reconsideration ..... 7

II. Lead Plaintiffs' Motion for Reconsideration Should Be Denied. ..... 7

- A. Applicable Legal Standard. ..... 7
- B. Lead Plaintiffs' Motion Fails To Meet the Standard for Reconsideration ..... 8
- C. Lead Plaintiffs' New Arguments Are Futile in Any Event ..... 9

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES


*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278 (10th Cir. 2008)............5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).......................................................................6

*Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730 (10th Cir. 2005)..........................................4

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008)............................................8

*Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997).........................................................9

*Hornsby v. Kaiser*, 35 F. App'x 846 (10th Cir. 2002).................................................................9

*Isengard v. N.M. Pub. Educ. Dep't*, No. CIV 08-0300 JB/RLP 2009 WL 5220371, at *5 (D.N.M. Dec. 9, 2009) (Browning, J.)...........................................................................7, 8

*Ladmen Partners, Inc. v. Blackstone Group, L.P.*, 08-CV-3601 (HB), 2009 U.S. Dist. LEXIS 87001 (S.D.N.Y. Sept. 22, 2009)...........................................................................8

*Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024 (10th Cir. 1996)...........................................5

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158 (10th Cir. 2007)...............................4

*Ostler v. Buhler*, 30 F.3d 142 (10th Cir. 1994)...........................................................................4

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)...............................................4

*Servants of the Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000)..........................................7, 8

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998)................................................11

*Stein v. Disciplinary Bd. of Sup. Court of N.M.*, No. CIV-04-0840 JB/DJS, 2006 WL 4079022 (D.N.M. May 31, 2006) (Browning, J.)...........................................................6

*Voelkel v. GMC*, 846 F. Supp. 1482 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir. 1994)....................7

*White v. Arnold*, 951 F.2d 1261 (10th Cir. 1991).........................................................................4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 41(b)........................................................................1, 4

17 C.F.R. § 210.4-01.........................................................................................................6

17 C.F.R. § 229.303....................................................................................................6, 9, 10

2 James Wm. Moore, *Moore's Federal Practice* § 8.04[1][e], at 8-31 (3d ed. 2009)....................6

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2373 (3d ed. 2008) .........................................................................................................................4

On September 22, 2008, the Underwriter Defendants[1] filed motions seeking dismissal "with prejudice." On January 27, 2010, the Court issued an order (the "Order") granting those motions.

On February 5, 2010, Lead Plaintiffs filed a motion purporting to seek "clarification" of the Court's Order. *See* Lead Plaintiffs' Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint (the "Motion") (Dkt. #254). But Lead Plaintiffs' motion is not one for clarification. There is nothing to clarify: The Court's Order unambiguously granted the Underwriter Defendants' motion seeking dismissal "with prejudice." While the Court's Order itself did not contain the phrase "with prejudice," it did not have to: Under Federal Rule of Civil Procedure 41(b), an order of involuntary dismissal presumptively is with prejudice. Nor is Lead Plaintiffs' motion one for leave to amend, though it quickly shifts to seeking such relief. The Motion does not offer any additional facts and does not attach a proposed amended pleading. Rather, Lead Plaintiffs' motion is one for reconsideration: It asks the Court to reach a different result not on the basis of newly pled facts but on the basis of additional—and previously available—legal authority.

Lead Plaintiffs' motion should be denied. As a preliminary matter, the Motion should be denied because it represents an effort to reargue the same alleged facts, now with a smattering of additional, previously available authority. More fundamentally, the Motion should

[1] The Underwriter Defendants are A.G. Edwards & Sons, Inc., BB&T Capital Markets, a division of Scott & Stringfellow, Inc., Bear, Stearns & Co. Inc. (now J.P. Morgan Securities Inc.), Citigroup Global Markets, Inc., FBR Capital Markets & Co., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus & Company, Incorporated, and UBS Securities LLC.

be denied because Lead Plaintiffs' complaint remains infirm: Lead Plaintiffs offer two federal regulations as additional authority for a purported duty to disclose, but Lead Plaintiffs then argue that those regulations would require the very same disclosures that the Court already has determined in fact were made, were immaterial, or were pled with insufficient facts—independent, fatal flaws that Lead Plaintiffs do not (and cannot) address.

## BACKGROUND

On September 22, 2008, the Underwriter Defendants filed motions to dismiss. Through those motions, the Underwriter Defendants sought dismissal of Lead Plaintiffs' claims "with prejudice." Dkt. #130 at 3, Dkt. #132 at 1, 40; Dkt. #165 at 4, 18; Dkt. #167 at 4; Dkt. #170 at 23.

On January 27, 2010, the Court issued a Memorandum Opinion and Order (the "Order"), by which it concluded: "**IT IS ORDERED** that the [motions to dismiss of the Underwriter Defendants] are granted." Order at 36 (Dkt. #251); *see also id.* at 1 ("[T]he Court grants all three motions.").[2] On the same day, the Court issued an Amended Memorandum Opinion and Order by which it, among other things, dismissed all of the Securities Act of 1933 claims against all other defendants as well. *See* Dkt. #252 at 2 ("The Court dismisses the Plaintiffs' claims based on the Securities Act of 1933 against all of the Defendants."); *accord id.* at 90.

The Court so ruled because it recognized that "none of the statements about which the Plaintiffs complain are actionable." Order at 23. The Court discussed each allegedly

[2] The online docket sheet lists each of the Underwriter Defendants as "*TERMINATED*" as of January 27, 2010. Dkt. Sheet (visited Feb. 18, 2010) (emphasis in original).

actionable statement or omission. *See id.* at 29-36. Relevant to the Lead Plaintiffs' current Motion: *First*, the Court found Thornburg Mortgage Inc. ("Thornburg Mortgage" or "TMI") disclosed its dealings in "Alt-A"-backed securities. *See* Order at 29 ("The Plaintiffs assert that this statement is misleading because it omits that TMI underwrote Alt-A loans—a fact that TMI's Form 10-K disclosed—and that TMI owned billions of dollars of MBSs that are backed by Alt-A collateral—a fact that could be inferred from the facts disclosed in the Form 10-K."). *Second*, with respect to Thornburg Mortgage's alleged failure to disclose that its reverse repurchase agreements contained cross-default provisions, the Court concluded that those provisions were not material at the time of the disclosures. *See id.* at 30-31 ("The Court finds that failure to disclose a contract provision, without alleging that the provision is unique, cannot constitute a material omission."). And, *third*, as to whether Thornburg Mortgage disclosed that its financing sources were allegedly becoming less diverse, the Court concluded that Lead Plaintiffs alleged "insufficient underlying facts to plausibly support the truth of the fact allegedly withheld." Order at 34.

On February 8, 2010, the Underwriter Defendants moved for entry of a final judgment as to the claims against the Underwriter Defendants. *See* Motion of Underwriter Defendants for Judgment Under FRCP 54(b) (Dkt. #255). That motion remains pending.

## ARGUMENT

### I. Lead Plaintiffs' Motion Is One for Reconsideration.

Lead Plaintiffs style their motion as one for clarification. They also request leave to amend their complaint. Their motion is neither one for clarification nor one for leave to amend; rather, it is a motion for reconsideration.

**A. Despite Its Styling, Lead Plaintiffs' Motion Is Not One for Clarification.**

Lead Plaintiffs purport to seek clarification as to whether the Court dismissed their claims with prejudice or without. *See* Motion ¶ 5. But there is nothing to clarify. The Underwriter Defendants moved for a dismissal "with prejudice," and the Court granted those motions. *See* Order (Dkt. #251) at 36; *accord id.* at 1 ("[T]he Court grants all three motions."). Lead Plaintiffs attempt to manufacture a need for clarity from the fact that the Court's Order itself does not contain the phrase "with prejudice"; but an involuntary dismissal (as here) is deemed with prejudice unless the order providing for that dismissal expressly provides otherwise:

> Involuntary Dismissal; Effect. . . . *Unless the dismissal order states otherwise*, a dismissal under this subdivision (b) and *any dismissal not under this rule*—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—*operates as an adjudication on the merits*.

Fed. R. Civ. P. 41(b) (emphases added); *see Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503, 505 (2001) ("[A] dismissal is 'upon the merits,' with the three stated exceptions, unless the court 'otherwise specifies.'"; "[A]n 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice.'"); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2373 (3d ed. 2008).[3] Accordingly, the Court's Order is perfectly clear in providing

[3] *See also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007); *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 733 (10th Cir. 2005) (unpublished decision); *Ostler v. Buhler*, 30 F.3d 142 (10th Cir. 1994) (unpublished table decision), *available at* 1994 WL 408124, at *2 (10th Cir. Aug. 3, 1994); *White v. Arnold*, 951 F.2d 1261 (10th Cir. 1991) (unpublished table decision), *available at* 1991 WL 268873, at *1 & n.2.

for a dismissal with prejudice.[4]

**B. Lead Plaintiffs' Motion Is Not One for Leave To File an Amended Complaint.**

Nor is Lead Plaintiffs' motion one for leave to file an amended complaint, despite focusing almost exclusively on arguments in favor of leave to do so. *See* Motion ¶¶ 6-30.

First, if Lead Plaintiffs' motion were one for leave to amend their complaint, it would have attached a proposed amended complaint; Lead Plaintiffs' motion does not do so. *See* D.N.M. LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."). This is a requirement with which Lead Plaintiffs are well-aware based on their previous effort to amend their existing complaint (which complaint itself is a consolidated, amended complaint). *See* Dkt. ##159-61 (filed Jan. 27, 2009) (attaching proposed amended

---

[4] Lead Plaintiffs' motion tacitly acknowledges that there is in fact nothing to clarify by spending only a single paragraph discussing the so-called "clarification" issue. *See* Motion ¶ 5. There, Lead Plaintiffs disingenuously claim: "In opposing Defendants' motion*s* to dismiss, Plaintiffs requested leave to amend in the event that the Court found the Complaint to be deficient in any way." *Id.* (emphasis added); *see also id.* (following this sentence with citation to their Exchange Act Opposition and their Securities Act Opposition). This is not accurate. For, while Lead Plaintiffs included a footnote seeking general leave to amend their claims under the Exchange Act of 1934, *see* Exchange Act Opp. (Dkt. ##154-57) at 58 n.48, Lead Plaintiffs sought leave to amend their claims under the Securities Act of 1933 only "for the limited purpose of" curing their standing problem, not any of the other deficiencies raised by the Underwriter Defendants' motions to dismiss, *see* Securities Act Opp. (Dkt. ##152-53) at 32.

complaint).[5]

Second, if Lead Plaintiffs' motion were one for leave to amend their complaint, it would include additional proposed factual allegations: e.g., new alleged misstatements or omissions. But, at least as to the Underwriter Defendants, Lead Plaintiffs do not do that. *See* Motion ¶¶ 10-19. Rather, Lead Plaintiffs merely cite to additional authority (specifically, Regulation S-K (17 C.F.R. § 229.303) and Regulation S-X (17 C.F.R. § 210.4-01)) in support of their argument that a duty existed for Thornburg Mortgage to make certain disclosures that Lead Plaintiffs' complaint already alleged were omitted. *See id.* Merely adding legal conclusions to the complaint cannot cure the failure to state a claim under Rule 12(b)(6), however, and thus cannot provide the grounds for leave to appeal. *See, e.g.*, 2 James Wm. Moore, *Moore's Federal Practice* § 8.04[1][e], at 8-31 (3d ed. 2009) ("Statements of legal conclusions in a pleading are not relevant to the determination of whether the pleading states a claim that is 'plausible:' While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." (footnote omitted) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009))).

---

[5] *See also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278 (10th Cir. 2008) (upholding district court's denial of shareholders' motion to amend where amendment would be futile and shareholders failed to attach proposed amended complaint to their response to motion to dismiss); *Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1029-30 (10th Cir. 1996) ("Plaintiff apparently did not file a copy of her proposed amended complaint with her motion for leave to amend, as required by the local rules of the district court. As the district court was not provided with a copy of the proposed amended complaint, it would have been impossible for the court to determine its viability. We conclude that the district court did not abuse its discretion in denying plaintiff's motion to amend."); *Stein v. Disciplinary Bd. of Sup. Court of N.M.*, No. CIV-04-0840 JB/DJS, 2006 WL 4079022, at *2 (D.N.M. May 31, 2006) (Browning, J.) (denying motion to amend in part "[b]ecause the Plaintiffs have not complied with the local rules" and, therefore, the Court "has no way of effectively determining, with accuracy, whether the futility argument has merit").

**C. Lead Plaintiffs' Motion Constitutes a Motion for Reconsideration.**

Lead Plaintiffs' motion is, simply, a naked attempt to reargue the motions to dismiss, now with the supposed benefit of additional authority (available at the time of briefing and argument) that Lead Plaintiffs failed to cite earlier: Regulation S-K (17 C.F.R. § 229.303) and Regulation S-X (17 C.F.R. § 210.4-01). *See* Motion ¶¶ 10-19. In short, Lead Plaintiffs argue that certain of the alleged omissions identified in the operative complaint should have been disclosed, not based on the authority cited by Lead Plaintiffs during the motion to dismiss briefing, but based on the newly cited regulations. Accordingly, Lead Plaintiffs' motion is one for reconsideration. Below, this opposition brief explains why Lead Plaintiffs' motion should be denied.

**II. Lead Plaintiffs' Motion for Reconsideration Should Be Denied.**

**A. Applicable Legal Standard.**

Relief from a district court's order should not be freely given. Motions for reconsideration are

> inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. *Absent extraordinary circumstances, . . . the basis for the [reconsideration] motion must not have been available at the time the first motion was filed.*

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (emphasis added); *see also Voelkel v. GMC*, 846 F. Supp. 1482, 1483 (D. Kan.) ("A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."), *aff'd*, 43 F.3d 1484 (10th Cir. 1994). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously

unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. Accordingly, "'a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.*'" *Isengard v. N.M. Pub. Educ. Dep't*, No. CIV 08-0300 JB/RLP 2009 WL 5220371, at *5 (D.N.M. Dec. 9, 2009) (Browning, J.) (emphasis added) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

**B. Lead Plaintiffs' Motion Fails To Meet the Standard for Reconsideration.**

Lead Plaintiffs' motion offers no intervening change in the law, no new alleged evidence, and no manifest injustice. Instead, it consists of new arguments and authorities that could have been presented in the prior briefing. *See* Motion ¶¶ 10-19. Regulation S-K and Regulation S-X are not new. As to the cases to which Lead Plaintiffs cite applying those regulations, only two post-date their opposition briefs—*Ladmen Partners, Inc. v. Blackstone Group, L.P.*, 08-CV-3601 (HB), 2009 U.S. Dist. LEXIS 87001 (S.D.N.Y. Sept. 22, 2009), and *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008)—and neither of those cases stands for a proposition any different than the other five cases that Lead Plaintiffs provide in the same string cite: namely, the proposition that the violation of a Regulation S-K duty, *if* properly alleged, may serve as a predicate for liability under the Securities Act of 1933. *See id.* ¶ 15. Lead Plaintiffs' motion should be denied for these reasons alone. *See Servants of Paraclete*, 204 F.3d at 1012; *Isengard*, 2009 WL 5220371, at *5 ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *It is not*

*appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing*." (emphasis added) (quotation marks omitted)).

**C. Lead Plaintiffs' New Arguments Are Futile in Any Event.**

Even if the Court were to consider Lead Plaintiffs' motion as to the Underwriter Defendants (which it should not), Lead Plaintiffs' arguments are unavailing. For this reason, Lead Plaintiffs' motion should be denied regardless of whether the Court reviews it as a motion for reconsideration, a motion for leave to amend, or a motion for clarification.[6]

At Paragraph 17 of their Motion, Lead Plaintiffs identify the two allegedly omitted "facts" the disclosure of which Regulation S-K purportedly would have required:

> (1) TMI's multi-billion portfolio of mortgage-backed securities ("MBS") backed by subprime or Alternative-A ("Alt-A") assets; and (2) TMI's increased reliance on reverse repurchase agreements—which contained cross-default provisions that were likely to be, and were in fact, triggered due to known market conditions, causing a run on TMI's assets.

Lead Plaintiffs also argue that this first "fact"—the "Alt-A" exposure—was the single "fact" required to be disclosed by Regulation S-X. *See* Motion ¶ 19 ("TMI's multi-billion dollar portfolio of mortgage-backed securities collateralized by Alt-A assets . . . was required to be disclosed to investors pursuant to . . . Regulation S-X . . . .").

[6] *See, e.g.*, *Hornsby v. Kaiser*, 35 F. App'x 846, 848 (10th Cir. 2002) ("A district court need not grant leave to amend if the amended complaint would also be subject to dismissal for failure to state a claim."); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1125-26 (10th Cir. 1997) (affirming denial of motion to amend securities fraud complaint where plaintiff failed to allege any material misstatements or omissions and proposed amendments "did not attempt to add a new misstatement").

First, as to Regulation S-K, there is a fatal disconnect between the regulation and the alleged omission regarding "Alt-A" exposure. The Regulation S-K provisions cited by Lead Plaintiffs, *see* Motion ¶ 14, require disclosure, in certain circumstances, of certain "trends," "demands," "commitments," "events," or "uncertainties." 17 C.F.R. § 229.303(a)(1) (requiring disclosure, in certain circumstances, of "any known *trends* or any known *demands*, *commitments*, *events* or *uncertainties* that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way" (emphases added)); 17 C.F.R. § 229.303(a)(3)(ii) (requiring disclosure, in certain circumstances, of "any known *trends* or *uncertainties* that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." (emphases added)). But the fact that Thornburg Mortgage had exposure to Alt-A assets is not a "trend[]," "demand[]," "commitment[]," "event[]," or "uncertaint[y]." Thus, by its very terms, Regulation S-K does not impose the alleged "Alt-A" duty of disclosure.

Second, as to Regulation S-X, we are aware of no authority for the proposition that an issuer's alleged violation of Regulation S-X can support liability under the Securities Act of 1933, and Lead Plaintiffs certainly do not cite any.

Third, and perhaps most fundamentally, the disclosures allegedly required by Regulation S-K and Regulation S-X already were addressed by the Court and found in fact to have been made, to be immaterial, and/or to have been pled with insufficient facts—each a fatal defect (entirely independent of the duty issue) that Lead Plaintiffs fail to address anywhere in their Motion.

With respect to the allegedly omitted "Alt-A" disclosure, the Court already has concluded that that disclosure in fact was made: "The Plaintiffs assert that this statement is misleading because it omits . . . that TMI owned billions of dollars of MBSs that are backed by Alt-A collateral—a fact that could be inferred from the facts disclosed in the Form 10-K." Order at 29; *see also, e.g.*, *id.* at 32 (citing Thornburg Mortgage 10-K for 2006); Thornburg Mortgage 10-Q for Q1 2007 at 39-40, 44 (providing detailed disclosure of characteristics of Thornburg Mortgage ARM Loan Portfolio, with originations distinguished from acquisitions, including loan-to-value ratios, borrower FICO score characteristics, and percentage of "[f]ull" documentation versus "stated income/no ratio"); Thornburg Mortgage 10-Q for Q2 2007 at 39-40, 45 (providing substantially the same information); Thornburg Mortgage 10-Q for Q3 2007 at 42-43, 48 (providing substantially the same information).

With respect to the alleged need to disclose the cross-default provisions of the reverse repurchase agreements, the Court already has concluded that those provisions were not material at the time of their alleged non-disclosure (and thus need not have been disclosed, even if a duty otherwise existed). *See* Order at 30-31 ("The Plaintiffs next insist that the Form 8-K was materially false or misleading because it failed to disclose that all of TMI's RPAs contained cross-default provisions such that, if triggered, might subject TMI to immediate liability on billions of dollars in margin calls. The Court finds that failure to disclose a contract provision, without alleging that the provision is unique, cannot constitute a material omission. TMI's RPAs

likely contain dozens—if not hundreds—of individual provisions, any one of which might be crucial depending upon what facts transpire.”).[7]

Which leaves only the alleged increased reliance on reverse repurchase agreements, something that was indisputably disclosed by Thornburg. For example, Lead Plaintiffs’ own complaint quotes a discussion in an August 20, 2007 Bloomberg article regarding “‘Thornburg’s lack of alternative sources of funding, and therefore increased reliance on repurchase agreement financing, given that the company no longer has access to the commercial paper and asset-backed securitization markets.’” CCAC ¶¶ 285-286 (quoting Bloomberg article); *see also, e.g.*, Sept. 2007 Prospectus at S-4, S-5 (stating that asset-backed and commercial paper markets no longer available, causing Thornburg Mortgage to resort to reverse repurchase agreements: “We had regularly issued asset-backed securities backed by our own originated high quality mortgage loans in order to permanently finance our mortgage loans and had done so as recently as July 31, 2007, but were suddenly unable to finance loans in this fashion. . . . [¶]A second channel for financing mortgage loans and mortgage securities is the commercial paper market . . . . However, we are not currently able to issue new commercial paper as that market still is not functioning. [¶]With two readily available sources of loans and

[7] The invocation of Regulation S-K does not allow Lead Plaintiffs to escape the materiality requirement: (1) The plain language of the relevant provisions of Regulation S-K (quoted in the text above) imposes a materiality limitation as to the “trends,” “demands,” “commitments,” “events,” or “uncertainties” subject to disclosure; and (2) Lead Plaintiffs’ cases confirm this requirement, *see, e.g.*, *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (holding Regulation S-K duty arises only where proposed disclosure is of known trend, demand, commitment, event, or uncertainty “‘reasonably expected [at the time of the disclosure] to have material effects’” (emphasis omitted) (quoting SEC explanatory release)).

securities financing not available, we turned to the reverse repurchase agreement market as another source of balance sheet financing.”).

Moreover, as to Lead Plaintiffs’ inference that TMI’s financing was becoming less diversified, the Court already has found that: “The Plaintiffs assert that TMI ‘failed to disclose that [TMI]’s financing sources were becoming increasingly less—not more—diversified,’ CCAC ¶ 577, at 175, but assert insufficient underlying facts to plausibly support the truth of the fact allegedly withheld.” Order at 34. Lead Plaintiffs’ motion provides no additional facts regarding Thornburg Mortgage’s alleged failure to disclose that its financing sources were becoming less diversified and thus, again, fails.

**CONCLUSION**

For the reasons stated above, the Underwriter Defendants respectfully request that the Court deny Lead Plaintiffs’ Motion for Clarification of the Court’s January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants’ Motions to Dismiss the Consolidated Amended Complaint.

Respectfully submitted,

ATKINSON, THAL & BAKER, P.C.

By /s/ *Clifford K. Atkinson*

Clifford K. Atkinson
John S. Thal
Albuquerque Plaza
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
Telephone: (505) 764-8111
*Attorneys for Defendants A.G. Edwards & Sons, Inc., BB&T Capital Markets, a division of Scott & Stringfellow, Inc., Bear, Stearns & Co. Inc. (now J.P. Morgan Securities Inc.), Citigroup Global Markets, Inc., FBR Capital Markets & Co., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus & Company, Incorporated, and UBS Securities LLC*

**OF COUNSEL:**
GIBSON, DUNN & CRUTCHER LLP
Jonathan C. Dickey
200 Park Avenue
New York City, NY 10166
Telephone: (212) 351-2399
*Attorneys for Defendants A.G. Edwards & Sons, Inc., BB&T Capital Markets, a division of Scott & Stringfellow, Inc., Citigroup Global Markets, Inc., Friedman, Billings, Ramsey & Co., Inc., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., and Stifel, Nicolaus & Company, Incorporated*

KATTEN MUCHIN ROSENMAN LLP
David C. Bohan
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
*Attorneys for Defendants Bear, Stearns & Co. Inc. (now J.P. Morgan Securities Inc.) and UBS Securities LLC*

WILLIAMS & CONNOLLY LLP
William Pittard
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000
*Attorneys for Defendant FBR Capital Markets & Co.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of February, 2010, I filed the foregoing MOTION OF UNDERWRITER DEFENDANTS FOR JUDGMENT UNDER FRCP 54(B) electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, as follows:

David F. Cunninghan, dfdc@catchlaw.com, tbolton@catchlaw.com

Gregg Vance Fallick gvf@fallicklaw.com

Frank T. Herdman fherdman@rubinkatzlaw.com, kbartlett@rubinkatzlaw.com

Charlotte Itoh citoh@ckelleylaw.com, citoh_nmlaw@yahoo.com

Mary R. Jenke mjenke@wabsa.com, tfox@wabsa.com

Cody Kelley ckelley@ckelleylaw.com

Clinton W. Marrs cmarrs@smidtlaw.com, melissa@smidtlaw.com

Shane C. Youtz, shane@youtzvaldez.com, Allison@youtzvaldez.com, sberman@sbtklaw.com, shandler@sbtklaw.com

Turner w. Branch, tbranch@branchlawfirm.com, arigg@branchlawfirm.com, czedalis@branchlawfirm.com, elopez@branchlawfirm.com, psanchez@branchlawfirm.com

Frederic S. Fox, ffox@kaplanfox.com

Aaron L. Brody, abrody@assbny.com

Nancy Kaboolian, nkaboolian@abbeygardy.com

Curtis Victor Trinko, ctrinko@trinko.com

Evan J. Smith, esmith@brodsky-smith.com

Aviah Cohen Pierson, acohenpierson@kaplafox.com

Francis M. Gregorek, gregorek@whafh.com

Betsy C. Manifold, manifold@whafh.com

Rachele R. Rickert, rickert@whafh.com

Tammy D. Cummings, tcummings@sbtklaw.com

Sean M. Handler, shandler@sbtlaw.com

Stuart L. Berman, sberman@sbtklaw.com

Michelle M. Newcomer, mnewcomer@btkmc.com

Andrew L. Zivitz, azivitz@btkmc.com

Benjamin J. Sweet, bsweet@btkmc.com

Richard A. Russo, rrusso@btkmc.com, acashwell@btkmc.com

Robert Badal, Robert.badal@wilmerhale.com

Jonathan C. Dickey, jdickey@gibsondunn.com

David C. Bohan, david.bohan@kattenlaw.com

David J. Stagman, david.stagman@kattenlaw.com

Lindsay R. Pennington, lpennington@gibsondunn.com

Dean J. Kitchens, DKitchens@GibsonDunn.com

Patrick H. Moran, moran@whafh.com

William H. Forman, wforman@obsklaw.com

William Pittard, wpittard@wc.com

Donald L. Flexner, dflexner@bsfllp.com

Philip C. Korologos pkorologos@bsfllp.com

Amy L. Neuhardt, aneuhardt@bsfllp.com

Joel Sher, jis@shapirosher.com

Joseph Goldberg, jg@fbdlaw.com, crm@fbdlaw.com

David A. Freedman, daf@fbdlaw.com, ks@fbdlaw.com, rpm@fbdlaw.com

David H. Urias, dhu@fbdlaw.com

**Notice has been delivered by fax to:**
Fred Taylor Isquith (212) 545-4653
Gregory M. Nespole (212) 545-4653

Martin E. Restituyo (212) 545-4653
Richard A. Lockridge (612) 339-0981
Karen H. Riebel (612) 339-0981
Arthur Shingler, III (619)233-0508

**Notice has been delivered by USPS to:**
Samuel P. Sporn
Schoengold Sporn Laitman & Lometti, P.C.
19 Fulton Street, Suite 406
New York, NY 10038

Joel P. Laitman
Schoengold Sporn Laitman & Lometti, P.C.
19 Fulton Street, Suite 406
New York, NY 10038

Jay P. Saltzman
Schoengold Sporn Laitman & Lometti, P.C.
19 Fulton Street, Suite 406
New York, NY 10038

Daniel B. Rehns
Schoengold Sporn Laitman & Lometti, P.C.
19 Fulton Street, Suite 406
New York, NY 10038

D. Seamus Kaskela
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

Nathan D. Prosser
Lockridge Grindal Nauen PLLP
100 Washington Avenue South
Minneapolis, MN 55401

David R. Scott, Esq.
Scott & Scott, LLC
108 Norwich Avenue
Colchester, CT 06415

*/s/ Clifford K. Atkinson*