**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

IN RE THORNBURG MORTGAGE, INC.                    No. CIV 07-0815  JB/WDS
SECURITIES LITIGATION

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Stay of Discovery, filed November 12, 2009 (Doc. 222).  The Court held a hearing on June 9, 2010.  The primary issue is whether the Court should partially lift the stay of discovery that it ordered on February 9, 2009, <u>see</u> Memorandum Opinion and Order at 3, filed February 9, 2009 (Doc. 146), and allow the Lead Plaintiffs to request -- and mandate that the Defendants disclose -- two categories of documents: (i) documents with which certain individual defendants appear to have absconded; and (ii) documents that the Defendants have turned over to other interested parties that are not involved in this lawsuit.  Because the Court finds that the Defendants and the newly appointed bankruptcy trustee have provided adequate assurances that there will be no spoliation of evidence, and because the Lead Plaintiffs have failed to adequately show that they will be unduly prejudiced by the disclosure of certain documents to non-party entities, the Court will deny the motion without prejudice to the request being re-raised when and if the Lead Plaintiffs provide adequate evidence that they are suffering some undue prejudice by the disclosures.

## <u>PROCEDURAL BACKGROUND</u>

This matter is four cases that have been consolidated before this Court.  Kenneth Slater, manager of KT Investments, LLC, filed an initial Complaint on August 21, 2007.  <u>See</u> Class Action Complaint, filed August 21, 2007 (Doc. 1).  On February 8, 2008, pursuant to a stipulation, the

Court consolidated the action that Slater brought with three other actions -- namely, <u>Snydman v. Thornburg Mortgage, Inc.</u>, No. CIV 07-1025 JEC/RHS, <u>Gonsalves v. Thornburg</u>, No. CIV 07-1069 MV/WDS, and <u>Smith v. Thornburg Mortgage, Inc.</u>, No. CIV 07-1115 MCA/RLP.  <u>See</u> Order Consolidating Related Actions, Appointing Lead Plaintiff, and Approving Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel at 2-3, filed February 8, 2008 (Doc. 49).  At that time, the Court selected Lead Plaintiffs, named the firms of Schiffrin Barroway Topaz & Kessler, LLP and Wolf Haldenstein Adler Freeman & Herz, LLP, as Co-Lead Counsel, and named the Branch Law Firm as Liaison Counsel.  <u>See id.</u> at 3.

On May 27, 2008, the Lead Plaintiffs filed the Consolidated Class Action Complaint ("CCAC") against the Defendants, alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78oo ("the Exchange Act"), and rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77a to 77aa ("the Securities Act"). On September 22, 2008, the Defendants moved to dismiss the CCAC.  On May 1, 2009, TMI filed for a petition for voluntary Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland.  <u>See</u> Suggestion of Bankruptcy at 1, filed May 4, 2009 (Doc. 192); Voluntary Petition at 1 (dated May 1, 2009), filed May 4, 2009 (Doc. 192-2). Because that bankruptcy petition was pending, the Court could not fully rule on the pending motions to dismiss, but did rule on those portions of the motions that were not subject to the bankruptcy stay. <u>See</u> Memorandum Opinion and Order at 36, filed January 27, 2010 (Doc. 251)(dismissing all claims against the Underwriter Defendants); Amended Memorandum Opinion and Order at 90, filed January 27, 2010 (Doc. 252)(dismissing the Securities Act claims, dismissing the Exchange Act claims against several defendants, and reserving ruling on the motion as to some claims and Defendants).  The Court's ruling dismissed all claims against the Underwriter Defendants, <u>see</u>

Memorandum Opinion and Order at 36 (Doc. 251), who initially took no position as to this motion. See Motion at 1 ("With the exception of the Underwriter Defendants, who take no position on it, this Motion is opposed by the Defendants.").

The Lead Plaintiffs provide two primary arguments for the lift of the PSLRA stay in this case. They first insist that, because two of the individual Defendants in this matter -- Larry A. Goldstone and Clarence D. Simmons -- absconded with some potentially relevant evidence, the lifting of the stay is necessary to preserve evidence. Second, they argue that the Lead Plaintiffs currently suffer from undue prejudice because certain potentially relevant documents have been turned over to two governmental agencies pursuant to government investigations of Thornburg Mortgage, Inc. ("TMI").[1]

At the hearing, Betsy Manifold, the Lead Plaintiffs' attorney, argued first that the Lead Plaintiffs were concerned about the documents that Goldstone and Simmons allegedly removed from TMI. See Transcript of Hearing at 36:20-40:9 (taken June 9, 2010)("Tr.")(Court, Manifold). She represented that, although some of the documents were returned to TMI's newly appointed Chapter 11 Bankruptcy Trustee, Joel I. Sher, some of the documents were not. See Tr. at 36:20-42:2 (Court, Manifold). She also argued that the Lead Plaintiffs are being denied access to documents that have

_____

[1] The Lead Plaintiffs also state that the discovery requests they desire to make are "highly particularized" and will not substantially burden the Defendants. Motion ¶ 6, at 2; Memorandum of Law in Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Discovery Stay at 15-18, filed November 11, 2009 (Doc. 218). The plain language of 15 U.S.C. § 78u-4(b)(3)(B) makes a particularized discovery request a necessary but insufficient part of a motion for partial lift of the PSLRA's mandatory stay. See 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."). Because the Court finds that any threat to evidence is being adequately addressed, and that the Lead Plaintiffs will not be unduly prejudiced, it need not explore whether the discovery sought is sufficiently particularized.

been disclosed to the Securities and Exchange Commission ("SEC") and to the Committee of Unsecured Creditors ("UCC"), and that "[h]ere we have a bankruptcy so we have a limited slice of the pie to which we're all trying to get access and we're definitely prejudiced by that." Tr. at 42:12-14 (Manifold).  She also represented that the Lead Plaintiffs are requesting a relatively limited number of documents, and that it would be a minimal burden on the Defendants to procure them because these documents have already been turned over to the SEC or the UCC.  See Tr. at 44:22-45:17 (Court, Manifold).  Robert Badal, attorney for Goldstone and Simmons, represented that Mr. Sher has reviewed all of the documents that Goldstone and Simmons removed from TMI and that Mr. Sher retained anything that was arguably related to this litigation or the bankruptcy proceeding, and only those documents and things that were clearly Goldstone's or Simmons' personal property were returned to them.  See Tr. at 47:22-49:5 (Badal).  Steven Farina, counsel for Defendant Friedman, Billings, Ramsey & Co., Inc., argued that his client has changed its position with respect to the motion in light of the possibility that the Court will allow the Lead Plaintiffs to move to amend their complaint and for reconsideration.  See Tr. at 50:20-54:20 (Court, Farina).  He fears the Lead Plaintiffs plan to pick through the documents for facts from which they can piece together a fresh claim against Friedman, Billings, Ramsey & Co., against whom the Court has held that the Lead Plaintiffs failed to state a claim.  See Tr. at 50:20-54:20 (Court, Farina).  David Cunningham, attorney for TMI and several individual Defendants, argued that his clients do not possess the documents that the Lead Plaintiffs seek, so it is not only the Lead Plaintiffs that do not have them.  See id. at 54:22-55:17 (Court, Cunningham).

Mr. Sher brought the Court and the parties' counsel up to speed on what has occurred since the briefing on this motion.  He informed the Court that he filed an adversary proceeding against Goldstone and Simmons, seeking to get possession of about forty-one boxes of documents and two

laptops that they had removed from TMI.  See Tr. at 56:11-57:15 (Court, Sher).  In December, Goldstone, Simmons, and Mr. Sher entered into a court-approved stipulation, pursuant to which Goldstone and Simmons returned all forty-one boxes of documents and the two laptops.  See Tr. at 57:1-15 (Sher).  Mr. Sher made digital images of the hard drives of those two laptops and retained possession of the laptops themselves.  See Tr. at 57:1-15 (Sher).  He then reviewed all forty-one boxes of documents, and returned to Goldstone and Simmons all material that was clearly personal in nature -- approximately nine-boxes worth of material.  See Tr. at 57:16-24 (Sher).  He made a log of all of the personal materials.  See id. at 62:19-25 (Court, Sher).  The remainder are still in Mr. Sher's possession, custody and control.  Mr. Sher has inventoried about sixteen or seventeen boxes of those documents, and there are another nineteen or so that Goldstone and Simmons assert are privileged.  See Tr. at 57:25-58:19 (Sher).  As to those documents, Goldstone and Simmons provided a privilege log.  See Tr. at 57:25-58:19 (Sher).  Through a separate agreement, Mr. Sher expects to soon be granted access to the disputed documents[2] and to those which a neutral judge finds to be non-privileged, and, when he is, he will inventory them as he did the first sixteen or seventeen boxes.  See Tr. at 58:1-59:8 (Sher).  Importantly, Mr. Sher represented that no TMI documents have been destroyed and that he has no intention of destroying any.  See Tr. at 60:11-61:3 (Sher).  He also represented that he is in the process of imaging the hard drive of every computer at TMI and plans to keep those images on file for as long as necessary.  See Tr. at 61:4-18 (Sher).[3]  Mr. Sher then explained his primary concern: that, if discovery is permitted, he will be

---

[2] The disputed documents are those that are not clearly personal as to Goldstone or Simmons, but which Goldstone or Simmons represent to be personal property.

[3] Mr. Sher admitted that he could not guarantee that Goldstone and Simmons turned over to him everything they took from TMI, but assured the Court that they represented to him that what they turned over to him was everything they took from TMI.  See Tr. at 61:19-62:2, 62:15-18 (Sher).

subject to the burdens that the PSLRA is designed to prevent because he will have to review every document produced.  See Tr. at 65:6-22 (Sher).

Mr. Sher conceded that he would be willing to enter into an evidence-preservation order in this case, even though he is already subject to a similar order in the bankruptcy court.  See Tr. at 66:14-67:12, 83:10-24 (Court, Sher); id. at 84:15-85:11 (Court, Manifold, Sher).  He also agreed that he would voluntarily turn over to the Lead Plaintiffs the logs he has made of those documents that he has reviewed thus far.  See Tr. at 67:13-22 (Court, Sher).[4]  As to the documents that have been turned over to the UCC, Mr. Sher represented that those documents are the subject of the bankruptcy court's protective order and thus that he would not be at liberty to turn those over in any event.  See Tr. at 67:23-68:12 (Court, Sher).

After the hearing, the parties submitted several additional documents for the Court's consideration.  The first document was a notice that Mr. Badal and Jonathan Shapiro, attorney for Goldstone, Simmons, and TMI, filed.  The letter informed the Court that TMI had, to date, produced 62,532 records or documents to the SEC, which amounted to a total of 813,726 pages.  See Notice of Submission Regarding Document Production in Response to SEC Subpoenas at 2, filed June 15, 2010 (Doc. 285).  This notice was to give the Court an impression of the quantity of documents the Defendants would be required to produce to the Lead Plaintiffs if the Court grants this motion.

The second document was a letter that the Underwriter Defendants' counsel submitted.  See Letter from Clifford K. Atkinson to the Court (dated June 15, 2010), filed June 15, 2010 (Doc. 287) ("Atkinson Letter").  In Mr. Atkinson's letter, the Underwriter Defendants take a position on the Lead Plaintiffs' motion to lift the PSLRA discovery stay -- they oppose it.  Mr. Atkinson argues that

---

[4] Mr. Badal represented that he had no objection to Mr. Sher turning over to the Lead Plaintiffs any document log that Mr. Sher has made.  See Tr. at 68:16-69:2 (Court, Badal).

the PSLRA does not contemplate lifting the discovery stay under the facts of this case.  <u>See</u> Atkinson Letter at 1.  Mr. Atkinson also suggests that the Court should deny the motion because it would put an undue burden on the Underwriter Defendants, given that the Court has dismissed all claims against them -- subject to a motion to amend and for reconsideration -- but they would nevertheless incur substantial additional cost reviewing the documents that would be produced to the Lead Plaintiffs.  <u>See</u> Atkinson Letter at 1 & n.2.  Mr. Atkinson argues that the Lead Plaintiffs have failed to adequately allege how the document disclosures to agencies and entities that are not parties to this lawsuit is unduly prejudicing them.  <u>See</u> Atkinson Letter at 2-3.  Finally, Mr. Atkinson suggests that the Lead Plaintiffs' intent in seeking discovery is not to avoid prejudice or to preserve documents, but rather to look for documents from which they might find more facts to allege against the Underwriter Defendants -- a purpose for which the PSLRA does not permit a court to lift the discovery stay.

The third document is a letter from Turner Branch, Liaison Counsel for the Lead Plaintiffs. <u>See</u> Letter from Turner Branch to the Court (dated June 17, 2010), filed June 17, 2010 (Doc. 289) ("Branch Letter").  In the letter, Mr. Branch draws to the Court's attention a document that Mr. Sher filed in TMI's pending bankruptcy case.  The document is styled a "Notice of Abandonment," and Mr. Branch asserts that this document "discloses for the first time that the hard drives of *sixty (60)* Thornburg Computers were 'wiped clean' at least 13 months ago."  Branch Letter at 1 (bold removed, italics in original).  He insists that this "revelation . . . undermines completely Defendants' repeated claims that evidence relevant to this action has been, and is being, sufficiently preserved."  Branch Letter at 1-2.  Mr. Branch argues that this deletion of electronically stored documentary evidence violates the Defendants' duty to preserve such documents and demonstrates that the Defendants' document-preservation policy is ineffective.  <u>See</u> Branch Letter at 3-4.

-7-

The fourth document was a letter by Mr. Sher, responding to the Branch Letter.  See Letter from Joel Sher to the Court (dated June 18, 2010), filed June 18, 2010 (Doc. 290)("Sher Letter"). Mr. Sher states that the Lead Plaintiffs did not contact him for clarification before inaccurately construing the meaning of the Notice of Abandonment and filing their letter with the Court.  See Sher Letter at 1-2.  Mr. Sher represents that the data on the abandoned computers has been imaged and is still available for review and, if it is relevant, disclosure, once the Court lifts the PSLRA discovery stay.  See Sher Letter at 1-2.  He further represents that he has hired his own independent forensic computer consultant to make images of the hard drives of all of TMI's computers and that this imaging process is still ongoing.  See Sher Letter at 1.  Finally, he asserts that he is still willing to enter into a litigation hold order with the Lead Plaintiffs, which the bankruptcy court can simultaneously approve.  See Sher Letter at 2.

Finally, Mr. Branch submitted another letter in response to Mr. Atkinson's letter.  See Letter from Turner Branch to the Court (dated June 22, 2010), filed June 22, 2010 (Doc. 294)("Second Branch Letter").  In that letter, Mr. Branch argues that the Court should disregard Mr. Atkinson's arguments against the motion because there remains a "very real possibility that vital information has, and continues to be, misplaced, destroyed and/or degraded during the pendency of this action." Second Branch Letter at 1.  He then argues, seemingly in the alternative, that: (i) the PSLRA discovery stay should no longer be in effect because there are no motions to dismiss pending; and (ii) that the Underwriter Defendants no longer have standing to oppose the motion because all claims against them have been dismissed, and they are therefore no longer parties to this action.  See Second Branch Letter at 2 & n.3.  Finally, Mr. Branch re-asserts that the Lead Plaintiffs are being substantially prejudiced, that they are not attempting to "cherry pick" documents to use in any future amended complaint, and that the claims against the Underwriter Defendants should be reinstated on

legal grounds, notwithstanding any facts found in any documents disclosed.  See id. at 2-3.[5]

## RELEVANT LAW OF THE PSLRA DISCOVERY STAY

"In 1995, Congress responded to perceived abuses of federal securities class action litigation by passing the Private Securities Litigation Reform Act of 1995 ("PSLRA")."  Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1280 (10th Cir. 2008).  "The PSLRA imposed certain limits on such litigation, including limits on recoverable damages and attorneys' fees, a "safe harbor" for forward-looking statements, mandated sanctions for frivolous litigation, a stay of discovery pending any motion to dismiss, and heightened pleading requirements."  Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d at 1280.  See In re Enron Corp Sec., 535 F.3d 325, 337 (5th Cir. 2008).

The discovery-stay provision states: "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  See Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 559 (6th Cir. 2005)(discussing a district court's ruling on a motion to lift the PSLRA discovery stay and citing 15 U.S.C. § 78u-4(b)(3)(B)); Newby v. Enron Corp., 338 F.3d 467, 469-70 (5th Cir. 2003) ("All discovery in Newby is stayed in accordance with the automatic stay provisions of the Private Securities Litigation Reform Act (PSLRA) pending a ruling on Defendants' Motion to Dismiss"); In re Cabletron Sys., Inc., 311 F.3d

_____

[5] On June 28, 2010, Mr. Sher filed a sixth document: a letter.  Mr. Sher's letter informed the Court that Goldstone and Simmons had filed an objection to Mr. Sher's Notice of Abandonment in the bankruptcy proceeding.  See Letter from Mr. Sher to the Court (dated June 28, 2010), filed June 28, 2010 (Doc. 296).  He also attached a copy of the objections that Goldstone and Simmons filed.

11, 33 (1st Cir. 2002)("[T]he PSLRA itself stays all discovery, with certain narrow exceptions, during the pendency of any motion to dismiss.").  There appear to be two reasons behind this limited discovery stay.  First, "[t]he legislative history of the PSLRA indicates that Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement."  In re LaBranche Sec. Litig., 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004)(citing H.R. Conf. Rep. No, 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730).  See S. Rep. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693 (expressing concern that "[t]he cost of discovery often forces defendants to settle abusive securities class actions.").  "Congress also enacted the mandatory stay of discovery to prevent plaintiffs from filing securities fraud lawsuits as a vehicle in order to conduct discovery in the hopes of finding a sustainable claims not alleged in the complaint."  In re LaBranche Sec. Litig., 333 F. Supp. 2d at 181 (quotations omitted).  See SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal., 189 F.3d 909, 911 (9th Cir. 1999)("The purpose of the [PSLRA] was to restrict abuses in securities class-action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; . . . [and] (3) the abuse of the discovery process to coerce settlement[.]")(quoting In re Advanta Corp. Sec. Litig., 180 F.3d 525, 530-31 (3d Cir. 1999)); In re Firstenergy Corp. Sec. Litig., 229 F.R.D. 541, 543 (N.D. Ohio 2004)("This discovery stay provision seeks to reduce the filing of frivolous lawsuits aimed at forcing corporate defendants to settle rather than bear the costs of discovery and to preclude plaintiffs from engaging in fishing expeditions to secure facts for a sustainable claim")(citing In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)); S. Rep. No. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693 ("[P]laintiffs sometimes file frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the

complaint.").

The PSLRA raises, but does not resolve, the question what constitutes undue prejudice that would warrant lifting of the PSLRA stay provisions. The Senate Committee notes provide only one example of what the Senate had in mind as an appropriate application of the exception to the PSLRA discovery stay: "The Committee recognizes, for example, that a motion to dismiss may remain pending for a period of time, and that the terminal illness of an important witness may necessitate the deposition of the witness prior to ruling on the motion to dismiss."[6]   Courts have, applying varying degrees of scrutiny, come to contrary conclusions whether the disclosure of documents to non-party entities constitutes undue prejudice to the plaintiff such that those documents should likewise be disclosed to PSLRA plaintiffs. See In re FirstEnergy Corp. Sec. Litig., 229 F.R.D. at 544-45 (citing cases).

## ANALYSIS

The Court is concerned about the potential spoliation of evidence that the Lead Plaintiffs have drawn to its attention. The Court heard at the hearing, however, the efforts that Mr. Sher is taking to obtain those documents and to ensure that no spoliation occurs. Mr. Sher and the Defendants' counsel represented to the Court: (i) that those documents have been obtained; (ii) that the documents are being cataloged; and (iii) subject to a jurisdictional caveat that they would attempt to quickly resolve, the Defendants and Mr. Sher would be willing to turn those logs over to the Lead Plaintiffs, and enter into agreements that would preserve the evidence in Mr. Sher's possession, custody, or control pending trial. See Tr. at 66:14-67:12, 83:10-24 (Court, Sher); id. at 84:15-85:11

---

[6] Some Courts have suggested that the example given in the Senate report is an example of when a lift of stay is needed to preserve evidence, not an example of undue prejudice. See, e.g., Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 721 (S.D. Cal. 1996).

(Court, Manifold, Sher). Ms. Manifold represented that those logs, the representations of the parties, and preservation order would satisfy the Lead Plaintiffs as to the preservation/spoliation issue. <u>See</u> <u>id.</u> at 81:7-17, 83:25-84:8, 85:8-11 (Court, Manifold). Upon the belief that the Defendants and Mr. Sher will turn over the document logs to the Lead Plaintiffs within thirty days of the hearing, and will work out preservation orders for the cause, the Court will deny the motion without prejudice to the Lead Plaintiffs' renewing this request insofar as it seeks discovery of the documents on the grounds of "necessary to preserve evidence." 15 U.S.C. § 78u-4(b)(3)(B). If the preservation issue cannot be resolved by the disclosures and preservation orders discussed in the hearing within thirty days, the Lead Plaintiffs may bring the issue back to the Court's attention. <u>See</u> Tr. at 90:13-91:8 (Court, Manifold, Sher).[7]

    With respect to the Lead Plaintiffs' argument that the Court should lift the PSLRA stay on discovery because the Lead Plaintiffs are being unduly prejudiced, the Court is unpersuaded. The Lead Plaintiffs argue that they are unduly prejudiced by not having access to documents that Simmons and Goldstone misappropriated, by not having access to the documents that have been given to the SEC or the New York Stock Exchange ("NYSE") in connection with investigations by those agencies, and by not having access to documents that the UCC has received in relation to TMI's Chapter 11 bankruptcy case. At the hearing, when the Court inquired into the nature of that

─────────────────

        [7] Based on the representations in Mr. Sher's June 18, 2010 letter, the Court is not persuaded that the Notice of Abandonment that Mr. Sher filed in the bankruptcy proceeding demonstrates that there is some substantial risk of evidence spoliation in this case. <u>See</u> Branch Letter at 1-4. The Court will thus remain at this time on the course that it set out in the hearing. If there remains substantial concerns about the preservation of documents in this case after thirty days from the date of the hearing -- or sooner, in the case of a bona fide risk of imminent document loss -- the Lead Plaintiffs may re-raise their concerns at that time. <u>See</u> Tr. at 91:10-92:7 (Court)("I'm going to order the parties to in the next 30 days try to come up with orders that do the document . . . preservation and also agreements on the production of the logs that have been produced to date as well as incorporating Mr. Badal's representation.").

prejudice by asking how those documents would assist the Lead Plaintiffs, Ms. Manifold stated that access would "allow [the Lead Plaintiffs] to evaluat[e] [the Defendants'] culpability with regard to the action, [and decide] whether [the Lead Plaintiffs] want to just settle out for policy limits at this time[.]" Tr. at 87:19-89:21 (Court, Manifold).  Although the Lead Plaintiffs found some district-court authority lifting the PSLRA discovery stay in circumstances similar to those present in this case, the Court does not feel compelled to follow them.[8]

Some cases appear to have gone so far as to suggest that, if the requested materials have been or are being assembled, or the defendant already has or will produce the assembled materials to other parties and/or in other venues, thereby imposing no undue burden on the defendant -- but the production is not necessary to preserve potentially discoverable evidence or the requesting party will not be prejudiced by delayed production -- the stay can be lifted.  See Memorandum of Law in

---

[8] The one case that the Lead Plaintiffs cite from the United States Court of Appeals for the Tenth Circuit, refusing to set aside a lift of the PSLRA discovery stay in circumstances ostensibly similar to those in this case, was a two-page order denying a writ of mandamus because the Tenth Circuit found that lifting the stay was not a clear abuse of discretion.  See In re Semgroup Energy Partners, L.P., No. 09-5028 (10th Cir. Apr. 24, 2009).  That a district court did not abuse its discretion in lifting the stay in circumstances similar to these does not establish that it would be an abuse of discretion not to lift the stay in such circumstances.  See In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1186 (10th Cir. 2009)("[W]e will grant a writ [or mandamus] only when the district court has 'acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power.'")(quoting United States v. Carrigan, 804 F.2d 599, 602 (10th Cir. 1986)).  Moreover, in In re Semgroup Energy Partners, L.P., the Lead Plaintiffs were able to point to "ongoing document production in civil and criminal investigations, [an] abrupt change in control, individual defendants hav[ing] been ousted and . . . current executives . . . being deposed concerning the facts and circumstances giving rise to this action."  In re Semgroup Energy Partners, L.P., 08-MD-1989 GKF-FHM, Order at 2, filed February 18, 2009 (Doc. 64).  This confluence of circumstances resulted in a "rapidly shifting [litigation] landscape," which, the district court judge concluded, warranted lifting the PSLRA discovery stay.  In re Semgroup Energy Partners, L.P., Order at 2.  While some of these factors are present in this case, others are not, and the combination of circumstances in this case does not create the "rapidly shifting landscape" of which the district court was concerned in In re Semgroup Energy Partners, L.P.  The Court thus finds the denial of the writ of mandamus in In re Semgroup Energy Partners, L.P. to be of little guidance in the current circumstances.

Support of Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Discovery Stay at 10, filed November 10, 2009 (Doc. 218)(citing cases).  The Court believes the judicial recognition of these additional grounds would be inconsistent with the PSLRA's plain language and would be adding exceptions that Congress did not -- for sound reasons -- include.  Sound litigation strategy and human nature both suggest that, if the Court allows discovery for the Lead Plaintiffs because of documents turned over to third-parties, the Defendants will look at the documents, too, thus reducing considerably the benefits of the stay to the Defendants that Congress intended them to have.  The Lead Plaintiffs have not convinced the Court that they are being unfairly disadvantaged vis-á-vis others who are pursuing the same limited pool of money which will be used to settle all claimants' claims.  As Jonathan Dickey, counsel for the Underwriter Defendants, commented during the hearing: "[W]hat is the emergency here that they claim prejudice over?  What is the race with the SEC that seems to underlie this [motion]?"  Tr. at 72:8-16 (Dickey).  The Lead Plaintiffs were unable to answer these questions to the Court's satisfaction.

The Lead Plaintiffs assert that they should be on equal footing with creditors and governmental agencies making claims against TMI in TMI's pending liquidation bankruptcy proceeding.  They are, however, aware of the two director-and-officer insurance policies -- a total value of $10,000,000.00 -- that will likely be used to settle their claims and from which defense costs are being deducted.  See Tr. at 43:17-22 (Manifold)("[C]urrently defendants' counsel over here are seeking defense costs against the insurance and there's only $10 million insurance that we've been able to locate."); id. at 87:3-15 (Manifold)("We have two . . . policies for a total of $10 million, and you've also already got the defense costs coming out of them.").  Mr. Cunningham represented that all the available insurance policies were attached to the briefing in the bankruptcy court.  See Tr. at 55:4-17 (Court, Cunningham).  The Lead Plaintiffs do not allege that there might be hidden

financial resources or unknown insurance policies that the additional discovery might uncover. Thus, the amount of readily available assets for recovery is known to the Lead Plaintiffs. There may be a balance sheet needed from the individual Defendants to determine available personal assets over which to litigate, but, by and large, the assets available for settlement -- or for which to litigate -- in this case are known. The Court also has no reason to believe that the NYSE and the SEC intend on bringing charges against TMI or otherwise further drain the directors-and-officers insurance policies. In other words, although the Lead Plaintiffs are at an informational disadvantage with respect to the NYSE and the SEC, there is no indication that these entities are competing for pieces of the same financial pie.[9]

Rather, the Lead Plaintiffs seek discovery for the more routine purpose of discovery, i.e., to

---

[9] The Court is slightly more concerned about the informational disadvantage at which the Lead Plaintiffs may be vis-á-vis the UCC, which is interested in getting its share of TMI when TMI liquidates. When asked to describe how this informational disadvantage unduly prejudices them in this litigation, however, Ms. Manifold had no detailed response. This case against TMI cannot go forward until the Lead Plaintiffs dismiss TMI as a Defendant, or the bankruptcy proceeding ends and the Court can finish ruling on the pending motion to dismiss. Until that time, the informational asymmetry may hinder the Lead Plaintiffs somewhat in settlement negotiations, but the Lead Plaintiffs are not completely in the dark. Moreover, if they do not dismiss TMI as a defendant, the litigation, at least as to TMI, cannot fully proceed until the bankruptcy case ends and TMI is liquidated, which could leave little or nothing to recover from TMI anyway. It appears the Lead Plaintiffs' concern is that the insurance policies will be depleted litigating this case and the pending bankruptcy proceeding before the Lead Plaintiffs will have access to discovery in this case, and therefore they will not know the full extent of the Defendants' wrongdoing until there is no money left in TMI's coffers -- or in its insurance policies -- to satisfy a judgment. This lack of all possible information puts upon the Lead Plaintiffs a difficult choice -- one that the Court cannot save them from having to make: offer to settle for policy limits now or forego amendments, dismiss the claims against TMI, and get their discovery now. The former might limit the potential recovery for the class, but there is no guarantee that the latter would uncover any evidence to make the Lead Plaintiffs' case stronger or that it would ultimately increase the class' recovery. It is a difficult choice. Litigation -- especially high-stakes plaintiffs' security litigation -- is fraught with difficult choices, however, and the Court does not believe this choice constitutes undue prejudice warranting a lifting of the PSLRA discover stay. If the Lead Plaintiffs find a better expression of how their informational disadvantage unduly prejudices them, other than that which the Court has articulated, they may renew this motion and bring that explanation to the Court's attention.

obtain additional evidence of the Defendants' wrongdoing to better assess the strength of their claims. This discovery is the general discovery that every plaintiff and its counsel wants in a case before he or she decides to put resources into a case going to trial, or before settling for policy limits early in the case. The Court understands this need of a party and its counsel to reduce uncertainty before making such an important decision. It is difficult, however, to say that this normal, routine situation is imposing "undue prejudice" to the Lead Plaintiffs, given that it is a prejudice or a risk that is in every case. Moreover, if the Court were to allow the Lead Plaintiffs to do this discovery, the order would effectively compel the Defendants to do the discovery, too, and look through all the documents produced. Given the prevalence of SEC and other investigations in fact situations in which plaintiffs lawyers bring class action securities lawsuits, finding exception to the stay for the purpose the Lead Plaintiffs suggest would eviscerate the stay provision. The Court believes a more demanding standard of "undue prejudice" is needed than the routine discovery any party wants to reduce the risk of inadequate strategies and tactical litigation decisions.

Regardless how much information they have, however, they will still be unable to proceed against TMI until the bankruptcy court lifts its stay or the Lead Plaintiffs dismiss TMI as a defendant in this case. At that point, the Court will rule on the Lead Plaintiffs' claims against TMI and their control-person claims against Goldstone, Simmons, and Decoff – either on the merits or by dismissing those portions of the motion to dismiss as moot.[10] Once the motions to amend or to

---

[10] Mr. Branch's argument that there is no motion to dismiss pending does not persuade the Court. See Second Branch Letter at 2 & n.3. The Court ruled only in part on the Motion to Dismiss Consolidated Amended Complaint by Defendants Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Ann-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, Jr., and Stuart C. Sherman, filed September 22, 2008 (Doc. 126). The Court reserved ruling on the Defendants' motion with respect to the Lead Plaintiffs' § 10(b) claim against TMI and the Lead Plaintiffs' § 20(a) control-person claims against Goldstone, Simmons, and Decoff. Until the Court

dismiss are no longer pending, the Court will lift the stay and the Lead Plaintiffs will be entitled to the discovery they seek.[11]  While the Lead Plaintiffs would be in a better position if they had more information right now, the same is true of all PSLRA plaintiffs, and Congress has determined that such plaintiffs should not be granted discovery while there are motions to dismiss pending.

The Court is also concerned about the prejudice the Defendants -- particularly the Underwriter Defendants -- would suffer if the Lead Plaintiffs get the discovery they seek.  Pending a forthcoming motion to amend and to reconsider, the Underwriter Defendants and many of the individual Defendants have been dismissed from the case.  At this point, unless the Lead Plaintiffs can convince the Court that it was wrong in its prior analysis or that there are fresh facts that would change the Court's conclusions, these Defendants will be released from this litigation without incurring liability.  If the Court allows the Lead Plaintiffs to discover now upwards of 800,000 pages of documents while the Lead Plaintiffs are drafting their motion for leave to amend the Complaint, the dismissed Defendants will incur substantial legal fees reviewing the documents preparing to oppose any amendment that seeks to re-assert claims against them based on that newly acquired

---

rules on those issues, the Defendants' motion to dismiss remains pending, at least in part.

[11] Notwithstanding the Court's comments in footnote 9, the Court notes that there is a potential issue whether the PSLRA discovery stay should continue to impede discovery in this case, given that TMI's declaration of Chapter 11 bankruptcy bars the Court from resolving the pending motion to dismiss.  Especially given that the bankruptcy is a Chapter 11 liquidation, after which TMI will cease to exist for most purposes, the law might provide that the bankruptcy stay renders the PSLRA discovery stay unduly prejudicial.  Neither party has provided the Court authority to that effect.  And the Court need not resolve this issue in this opinion, because, in the Court's view, it is the Lead Plaintiffs' motions to amend and for reconsideration that are currently delaying the process of litigation.  Once the Court stops allowing amendments or the Lead Plaintiffs stop asking for them, the parties can address whether TMI's bankruptcy justifies lifting the PSLRA discovery stay or otherwise allowing the litigation to proceed.  The Lead Plaintiffs might also consider whether the law allows them to proceed with their control-person claims against the individual Defendants without TMI as a Defendant, provided they prove TMI's liability.

information.  Moreover, the Lead Plaintiffs' actions to date have suggested to the Court that it is the

Lead Plaintiffs, not the Defendants, who are now delaying the progress of litigation.  It appears that

the Lead Plaintiffs, rather than pursuing the claims the Court has found they properly stated, are

trying to acquire more facts for the purpose of having a better litigation position.  The Court is not

convinced that being at a slight disadvantage in litigation or settlement is the undue prejudice to

which Congress referred in drafting the PSLRA.  The Court concludes that the Lead Plaintiffs have

failed to establish that the PSLRA discovery stay is causing them undue prejudice, and thus the

Court denies their motion to partially lift the stay.

     **IT IS ORDERED** that  the Lead Plaintiffs' Motion for a Partial Lifting of the PSLRA Stay

of Discovery is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Frederick S. Fox
Aviah Cohen Pierson
Kaplan Fox & Kilsheimer
New York, New York

-- and --

Richard A. Lockridge
Nathan D. Prosser
Karen H. Riebel
Lockridge Gindal Nauen & Holstein
Minneapolis, Minnesota

-- and --

Nancy Kaboolian
Abbey Spanier Rodd Abrams & Paradis, LLP
New York, New York

-- and –

Curtis V. Trinko
Law Offices of Curtis V. Trinko, LLP
New York, New York

-- and --

Evan J. Smith
Brodsky & Smith, L.L.C.
Mineola, New York

-- and --

David R. Scott
Scott & Scott, LLC
Colchester, Connecticut

-- and --

Arthur Shingler, III
Scott & Scott, LLP
San Diego, California

-- and --

Charlotte Itoh
Cody Kelley
Kelley Law Offices
Albuquerque, New Mexico

-- and --

Shane C. Youtz
Albuquerque, New Mexico

-- and --

Turner W. Branch
Branch Law Firm
Albuquerque, New Mexico

-- and --

Fred T. Isquith
Gregory Nespole
Rachel S. Poplock
Martin E. Restituyo
Wolf Haldenstein Adler Freeman & Herz, LLP
New York, New York

-- and --

Betsy C. Manifold
Francis M. Gregorek
Rachele R. Rickert
Patrick Moran
Wolf Haldenstein Adler Freeman & Herz, LLP
San Diego, California

-- and --

Andrew Zivitz
Benjamin Sweet
Michelle Newcomer
Richard Russo, Jr.
Sean M. Handler
Stewart L. Berman
D. Seamus Kaskela
Barroway Topaz Kessler Meltzer & Check, LLP
Radnor, Pennsylvania

       *Attorneys for the Plaintiffs*

Amy L. Neuhardt
Boies, Schiller & Flexner, LLP
Washington, District of Columbia

-- and --

Donald L. Flexner
Philip C. Korologos
Boies, Schiller & Flexner, LLP
New York, New York

  *Attorneys for Defendants Garrett Thornburg, Anne-Drue M. Anderson, David A. Ater,*
  *Joseph H. Badal, Eliot R. Cutler, Ike Kalangis, Francis I. Mullin, III, Stuart C.*
  *Sherman, and Paul G. Decoff*

Frank T. Herdman
Rubin Katz Law Firm, P.C.
Santa Fe, New Mexico

-- and --

William H. Forman
Scheper Kim & Overland, LLP
Los Angeles, California

-- and --

David F. Cunningham
Thompson, Hickey, Cunningham, Clow & April, P.A.
Santa Fe, New Mexico

  *Attorneys for Defendants Thornburg Mortgage, Inc., Garrett Thornburg, Larry A.*
  *Goldstone, Clarence G. Simmons, Anne-Drue M. Anderson, David A. Ater, Joseph*
  *H. Badal, Eliot R. Cutler, Michael B. Jeffers, Ike Kalangis, Owen M. Lopez, Francis I.*
  *Mullin, III, and Stuart C. Sherman*

Clinton W. Marrs
Tax, Estate & Business Law, N.A., LLC
Albuquerque, New Mexico

  *Attorney for Defendants Larry A. Goldstone and Clarence G. Simmons*

Robert Badal
WilmerHale
Los Angeles, California

  *Attorney for Defendants Thornburg Mortgage, Inc., Larry A. Goldstone, Clarence G.*
  *Simmons, Michael B. Jeffers, and Owen M. Lopez*

Joel Sher
Shapiro Sher Guinot & Sandler
Baltimore, Maryland

-- and --

Mary R. Jenke
Walsh Anderson Brown Aldridge & Gallegos
Albuquerque, New Mexico

      *Attorneys for Thornburg Mortgage, Inc.*

Clifford K. Atkinson
John Thal
Atkinson & Thal, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants AG Edwards & Sons, Inc., BB&T Capital Markets, UBS Securities, Citigroup Global Markets Inc., Friedman, Billings, Ramsey & Co., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus & Company, Inc., and Bear Stearns & Co.*

Jonathan C. Dickey
Gibson, Dunn & Crutcher, LLP
New York, New York

-- and --

Dean J. Kitchens
Lindsay R. Pennington
Gibson, Dunn & Crutcher, LLP
Los Angeles, California

      *Attorneys for Defendants AG Edwards & Sons, Inc., BB&T Capital Markets, Citigroup Global Markets Inc., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., and Stifel, Nicolaus & Company, Inc.*

David Bohan
David Stagman
Katten Muchin Rosenman, LLP
Chicago, Illinois

      *Attorneys for Defendants UBS Securities and Bear Stearns & Co.*

William Pittard
Williams & Connolly, LLP
Washington, D.C.

*Attorney for Defendant Friedman, Billings, Ramsey & Co.*