# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

In re THORNBURG MORTGAGE, INC.                    No. CIV 07-0815 JB/WDS
SECURITIES LITIGATION

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint, filed February 5, 2010 (Doc. 254). The Court held a hearing on June 9, 2010. The primary issue is whether the Court should clarify for the Lead Plaintiffs the meaning of its January 27, 2010 Memorandum Opinions and Orders (Docs. 251 & 252). For the reasons stated on the record, and for further reasons consistent with those already stated, the Court concludes that the Lead Plaintiffs' motion asks whether the Lead Plaintiffs may move to amend, and the Court grants the motion, and clarifies for the Lead Plaintiffs that they may file a motion to amend and a motion to reconsider. The forthcoming motions must, however, conform to the parameters that the Court set forth in the hearing and in this order.

## FACTUAL BACKGROUND

This case arises from what the Lead Plaintiffs refer to as "a campaign of selective disclosure characterized by half-truths, outright falsehoods and strategic omissions." Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Amended Complaint Filed by Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Anne-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez,

Francis I. Mullin, Jr., and Stuart C. Sherman at 3, filed December 22, 2008 (Docs. 154, 155, 156, 157). The Consolidated Class Action Complaint, filed May 27, 2008 (Doc. 68)("CCAC"), describes a series of public statements and filings dating back to early 2006 that the Lead Plaintiffs assert were fraudulent material misrepresentations. The suit itself is a consolidated action which sets forth claims under the Securities Act of 1933, 15 U.S.C. §§ 77a to 77aa ("Securities Act"), and under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a to 78oo ("Exchange Act").

The Lead Plaintiffs are W. Allen Gage, individually and on behalf of J. David Wrather, Harry Rhodes, FFF Investments, LLC, Robert Ippolito, individually and as Trustee for the Family Limited Partnership Trust, and Nicholas F. Aldrich, Sr., individually and behalf of the Aldrich Family, representative plaintiffs Betty L. Manning and John Learch, and Boilermakers Lodge 154 Retirement Plan. The "Individual Defendants" consist of Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, and Clarence B. Simmons. The Thornburg Defendants consist of the Individual Defendants and Thornburg Mortgage, Inc. ("TMI"). The "Underwriter Defendants" consist of AG Edwards & Sons, Inc., Bear Stearns & Co., Inc., BB&T Capital Markets, Citigroup Global Markets, Inc., Friedman Billings Ramsey & Co., Oppenheimer & Co., Inc., RBC Dain Rauscher, Inc., Stifel Nicolaus & Co., Inc., and UBS AG. The "Director Defendants" consist of Anne-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, III, and Stuart C. Sherman. The "Class Period" refers to the time period from April 19, 2007 through March 19, 2008, inclusive.

## PROCEDURAL BACKGROUND

On May 27, 2008, the Plaintiffs filed the CCAC against the Defendants, asserting claims arising under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78jb and 78t(a), and sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.

Specifically, the Plaintiffs asserted: (i) claims against the Thornburg Defendants for violations of section 10(b) of the Exchange Act and of rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.1-b-5; (ii) claims against the Individual Defendants for violations of section 20(a) of the Exchange Act; (iii) claims against the Thornburg Defendants, the Underwriter Defendants, and the Director Defendants for violations of sections 11 and 12(a)(2) of the Securities Act; and (iv) claims against the Individual Defendants for violations of section 15 of the Securities Act.

On September 22, 2008, the Defendants moved to dismiss all of the Plaintiffs' claims. <u>See</u> Motion to Dismiss Consolidated Amended Complaint by Defendants Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Ann-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, Jr., and Stuart C. Sherman, filed September 22, 2008 (Doc. 126); Opposed Motion by May/June 2007 Underwriter Defendants to Dismiss Consolidated Class Action Complaint; Memorandum of Points and Authorities in Support Thereof, filed September 22, 2008 (Doc. 128); Opposed Motion to Dismiss of Underwriter Defendants UBS Securities LLC and Bear Stearns & Co., Inc., filed September 22, 2008 (Doc. 130); Motion of Friedman, Billings, Ramsey & Co, Inc. to Dismiss and Memorandum of Points and Authorities in Support Thereof, filed September 22, 2008 (Doc. 132). On December 22, 2008, the Plaintiffs filed briefs in opposition to the Defendants' motions to dismiss. <u>See</u> Plaintiffs' Opposition to the Motions to Dismiss Plaintiffs' Securities Act Claims Submitted By: 1) Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Anne-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, Jr., and Stuart C. Sherman; 2) The May/June 2007 Underwriter Defendants; 3) Friedman, Billings, Ramsey & Co., Inc.; 4) UBS Securities LLC and Bear Stearns & Co, Inc.; and 5) Stifel, Nicolaus & Company, Incorporated, filed

December 22, 2008 (Docs. 152, 153); Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Amended Complaint Filed by Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Anne-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, Jr., and Stuart C. Sherman, filed December 22, 2008 (Docs. 154, 155, 156, 157). On February 5, 2009, the Defendants filed reply briefs in further support of their motions. See Reply in Support of Opposed Motion by May/June 2007 Underwriter Defendants to Dismiss Consolidated Class Action Complaint, filed February 5, 2009 (Doc. 165); Joinder of Underwriter Defendant Stifel, Nicolaus & Company, Incorporated in Reply in Support of Motion to Dismiss, filed February 5, 2009 (Doc. 166); Reply Memorandum (and Joinder) in Support of Motion to Dismiss by Underwriter Defendants UBS Securities LLC and Bear, Stearns & Co., Inc., filed February 5, 2009 (Doc. 167); Reply Memorandum in Support of Motion to Dismiss Consolidated Amended Complaint by Defendants Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Joseph H. Badal, Paul G. Decoff, Clarence D. Simmons, Anne-Drue M. Anderson, David A. Ater, Eliot R. Cutler, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, Jr., and Stuart C. Sherman, filed February 5, 2009 (Doc. 168); Reply in Support of Motion of Friedman, Billings, Ramsey & Co., Inc. to Dismiss, filed February 5, 2009 (Doc. 170).

On April 22, 2009, the Court heard oral argument from the Plaintiffs and the Defendants in connection with the Defendants' motions to dismiss the CCAC. During oral argument on April 22, 2009, counsel for Friedman Billings Ramsey, one of the Underwriter Defendants, conceded that Regulation S-K's disclosure obligations bind the Defendants: "There are two requirements in judging our securities filings. One, we have to say certain things. Reg SK and SC provide what we have to say. And then otherwise, we cannot misrepresent what we do say. We cannot say

something that's false or would mis-lead."  Transcript of Hearing at 38:12-18 (taken April 22, 2009)("Apr. 22 Tr.")(Gutman).  The Plaintiffs' counsel concurred in the interpretation of the Defendants' disclosure obligations.  See id. at 196:24-197:10 (Court, Zivitz).

On January 27, 2010, the Court issued two Memorandum Opinions and Orders, granting in part and denying in part the Defendants' motions to dismiss the CCAC.  The Court dismissed the Lead Plaintiffs' claims arising under sections 11, 12(a)(2), and 15 of the Securities Act against all of the Defendants.  The Court dismissed the claims based on section 10(b) of the Exchange Act, and rule 10b-5 promulgated thereunder, against Thornburg, Badal, Decoff and Simmons.  The Court dismissed the section 20(a) claims against Thornburg and Badal.  The Court allowed the section 10(b) claims to proceed against Goldstone, and reserved ruling on section 10(b) claims against TMI and on the section 20(a) claims against Goldstone, Simmons, and Decoff.  See Memorandum Opinion and Order at 36, filed January 27, 2010 (Doc. 251); Amended Memorandum Opinion and Order at 90, filed January 27, 2010 (Doc. 252).

In dismissing the Plaintiffs' claims arising under sections 11 and 12(a)(2) of the Securities Act, the Court noted that liability attaches in two instances: (i) where a defendant omits to disclose information that the law requires the defendant to disclose; or (ii) where a defendant issues a materially false or misleading statement in a registration statement or prospectus.  See Memorandum Opinion and Order at 17-19 (Doc. 251).  The Court further held that liability cannot be premised on silence in the absence of a duty to disclose and held that the Plaintiffs "failed to provide the Court with the source of such a duty."  Amended Memorandum Opinion and Order at 86 (Doc. 252) (citation omitted).  See Memorandum Opinion and Order at 32 (Doc. 251).

In dismissing the Plaintiffs' claims arising under section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, the Court noted that the sources of a duty to disclose

-5-

information under the federal securities laws are found either: (i) in express mandates of the statute

and rules promulgated under the statute; or (ii) in the general anti-fraud provisions of the statues and

rules.  See Amended Memorandum Opinion and Order at 63 (Doc. 252).  The Court further stated

that the Plaintiffs failed to provide such a source for the Defendants' disclosure duties:

> The Plaintiffs have not pointed to any statute or SEC regulation that demands disclosure of the facts allegedly withheld, nor, after careful review, does the Court find any disclosed facts that were rendered materially false or misleading in the absence of the withheld facts.  As such, the Court finds that the Defendants did not have a duty to disclose these allegedly withheld facts.

Amended Memorandum Opinion and Order at 63 (Doc. 252).

In analyzing the Plaintiffs' section 20(a) claims against Thornburg and Badal, the Court

noted that "the only articulable act or omission by TMI as an entity, the misleading Form 8-K dated

March 3, 2008, was filed after Thornburg's tenure as CEO ended" and after Badal had returned from

TMI.  See Amended Memorandum Opinion and Order at 77 (Doc. 252).  As a result, the Court

denied the Plaintiffs' section 20(a) claims against the two individuals.

The remedy the Defendants sought in moving to dismiss was a dismissal with prejudice.  In

opposing the Defendants' motions to dismiss, however, the Lead Plaintiffs requested leave to amend

in the event that the Court found the CCAC to be deficient in any way.  See Plaintiffs' Opposition

to Defendants' Motion to Dismiss Consolidated Amended Complaint at 58 n.48; Plaintiffs'

Opposition to the Motions to Dismiss Plaintiffs' Securities Act Claims at 32.  The Memorandum

Opinions and Orders did not state, however, whether the dismissals were with or without prejudice.

The Lead Plaintiffs' motion ostensibly asks the Court to clarify this apparent ambiguity.[1]

Specifically, the Plaintiffs request that the Court: (i) order that the Court issued the Memorandum

---

[1] The parties attempted in good faith to resolve this matter short of motion practice pursuant to D.N.M. LR-Civ. 7.1, but were unsuccessful.  See Motion at 1 & n.1.

Opinions and Orders without prejudice; and (ii) allow the Plaintiffs to amend the CCAC to cure the averments it held to be deficient.

In their motion, the Lead Plaintiffs assert that, if permitted, they will amend the CCAC to address the following: (i) the Court's holding that the Plaintiffs failed to state a claim under sections 11 and 12(a) of the Securities Act, to address, among other things, the impact of Regulation S-K, 17 C.F.R. § 229.303, and Regulation S-X, 17 C.F.R. § 210.4-01, on the Defendants' liability for material omissions from the offering documents; (ii) the Court's implicit finding that TMI was not liable for Goldstone's misrepresentations in June 2007 and July 2007, insofar as that finding affects the Individual Defendants' liability under section 20(a); (iii) the Individual Defendants' liability under section 20(a) of the Exchange Act as a result of TMI's failure to comply with its affirmative duty pursuant to section 10(b) of the Exchange Act to disclose all material, nonpublic information in its possession before selling $900 million in TMI securities during the Class Period; and (iv) the Court's holding that the alleged misstatements in TMI's offering documents are not actionable.[2] See Motion ¶ 9, at 4. The Lead Plaintiffs devote substantial time and space, however, to arguing the legal merits of their case and insisting that, if permitted, they would add additional factual and legal assertions to the CCAC from which the Court would conclude that they had stated a proper claim. See Motion ¶¶ 9-29, at 4-12. Specifically, the Lead Plaintiffs represent that they intend to add additional factual and legal allegations to state a claim under sections 11 and 12(a) of the Securities Act, additional allegations to show that TMI was obligated to disclose all material non-public information in its possession, and additional allegations that will allow it to state a claim under

---

[2] The Lead Plaintiffs recognize that TMI is in bankruptcy and subject to the automatic stay of 11 U.S.C. § 362. Accordingly, they are not seeking relief against TMI by this motion and represent that they intend to move to voluntarily dismiss the case against TMI without prejudice in recognition of the automatic stay.

section 20(a) of the Exchange Act against Thornburg and Badal.

Anderson, Ater, Cutler, Kalangis, Mullin, and Thornburg, joined by Badal, Decoff, Jeffers, Lopez, Sherman, Goldstone, and Simmons, oppose the motion in part.  See Certain D&O Defendants' Response in Opposition to Plaintiffs' Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint, filed February 18, 2010 (Doc. 257)("Individual Defendants' Response"); Defendants Joseph H. Badal, Paul Decoff, Michael Jeffers, Owen Lopez and Stuart Sherman's Joinder to Certain D&O Defendants' Response in Opposition to Plaintiffs' Motion for Clarification [Docket No. 257] of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint, filed February 18, 2010 (Doc. 259); Joinder of Defendants Goldstone and Simmons in Certain D&O Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Clarification, filed February 22, 2010 (Doc. 261).  To the extent that the motion seeks clarification whether the Court's dismissal of several of the Lead Plaintiffs' claim was with or without prejudice, the Individual Defendants do not oppose the motion.  See Certain D&O Defendants' Response at 1.  They oppose the motion, however, to the extent that it is a disguised motion to amend.  See Certain D&O Defendants' Response at 1-3.  The Individual Defendants argue that the Lead Plaintiffs have failed to comply with local rules governing motions for leave to amend, and, therefore, the Court should deny the motion to the extent it is a motion for leave to amend.  See Certain D&O Defendants' Response at 3-4 (citing D.N.M. LR-Civ. 15.1, which states that "[a] proposed amendment to a pleading must accompany a motion to amend.").

The Underwriter Defendants likewise oppose the Lead Plaintiffs' motion.  See Underwriter Defendants' Opposition to Lead Plaintiffs' Motion for Clarification of the Court's January 27, 2010

Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint, filed February 18, 2010 (Doc. 258)("Underwriter Defendants' Response").  Unlike the Individual Defendants, the Underwriter Defendants are opposed to the motion without any exception.  <u>See</u> Underwriter Defendants' Response at 9 ("Lead Plaintiffs' motion should be denied regardless of whether the Court reviews it as a motion for reconsideration, motion for leave to amend, or a motion for clarification.").  Also unlike the Individual Defendants, the Underwriters Defendants are not concerned that the motion is a disguised motion to amend, but rather argue that it is a disguised motion for reconsideration.  <u>See</u> Underwriter Defendants' Response at 1 ("Nor is Lead Plaintiffs' motion one for leave to amend, though it quickly shifts to seeking such relief. . . .  Rather, Lead Plaintiffs' motion is one for reconsideration[.]"); Underwriter Defendants' Response at 3, 7-9.  The Underwriter Defendants assert that, to the extent that the motion is one for reconsideration, the Court should deny it.  <u>See</u> <u>id.</u> at 3 ("Lead Plaintiffs' motion should be denied."); Underwriter Defendants' Response at 5-6.  They argue that the Lead Plaintiffs' motion fails to meet the legal standards for reconsideration of a judicial decision, <u>see</u> <u>id.</u> at 8-9, and that the new arguments are futile and would fail if the Court considered them, <u>see</u> <u>id.</u> at 9-13.  The only Defendant who does not appear to oppose the Lead Plaintiffs' motion is TMI, against whom this action is stayed under 11 U.S.C. § 362.  The Plaintiffs make clear that this motion seeks no relief as to TMI.

The Lead Plaintiffs filed two reply briefs, but only one containing legal arguments.  <u>See</u> Plaintiffs' Reply Memorandum of Law in Further Support of Their Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint and in Response to the Underwriter Defendants' Opposition Thereto, filed March 4, 2010 (Doc. 271)("Reply"); Plaintiffs'

Reply Memorandum of Law in Further Support of Their Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint and in Response to Certain D&O Defendants' Opposition Thereto, filed March 4, 2010 (Doc. 272).  In their reply, the Lead Plaintiffs insist that their motion for clarification was a proper motion under the circumstances, see Reply to Underwriter Defendants at 1-4, then proceed to argue the merits of a motion to amend and explain why an amendment would not be futile, see id. at 4-7, and why the Court's prior dismissal should be without prejudice, see id. at 8-11.

At the hearing, the Court opened up conversation by giving the parties his initial impression of the motion.  The Court stated that, because the issue whether the Lead Plaintiffs could amend was not addressed in the opinion, and the parties seek different outcomes on that point -- the Defendants seek dismissal with prejudice, the Lead Plaintiffs seek leave to amend if the CCAC was found deficient -- the motion seeking clarification was appropriate.  See Transcript of Hearing at 8:17-24 (taken June 9, 2010)("Tr.")(Court).  The Court stated that it would thus grant the motion to clarify. See Tr. at 8:17-24 (Court); id. at 30:11-14 (Court).

In granting the Lead Plaintiffs' motion, the Court clarified that, because the lawsuit is still, in many respects, in its infancy, it would be inclined to allow the Lead Plaintiffs to file a motion to amend and/or a motion for reconsideration.  See Tr. at 8:25-12:10 (Court).  The Court stated that, at this early stage, it would be inclined to allow the Lead Plaintiffs to amend, and that it believed there might exist factual allegations that the Lead Plaintiffs could add to cure their pleading deficiencies.  See Tr. at 9:7-10:4 (Court).  The Court also said that the Lead Plaintiffs would have to file a motion to amend, not file an amended complaint, so that the Court and the Defendants could decide whether the amendment would be futile.  See Tr. at 8:25-9:6 (Court).

-10-

The Court then said it thought that most of the Lead Plaintiffs' motion to clarify was not, in fact, a motion to clarify or a motion to amend, but was a motion to reconsider.  <u>See</u> Tr. at 9:7-12:10 (Court).  It appeared to the Court that the Lead Plaintiffs disagreed with the Court on some of its rulings.  <u>See</u> Tr. at 9:7-15 (Court).  The Court thought that the Lead Plaintiffs needed to file a motion to reconsider on those issues, rather than trying to get such review on a motion to amend, so the Court and the Defendants could see clearly where the Lead Plaintiffs disagree with the Court's legal conclusions on full briefing.  <u>See</u> Tr. at 9:7-12:10 (Court).  The Court was concerned that it did not yet have the benefit of a full briefing from the Defendants on the issues on which the Lead Plaintiffs want reconsideration.  <u>See</u> Tr. at 12:7-10 (Court).

The Court then allowed the parties to argue, being informed of the Court's inclinations. Benjamin Sweet, attorney for the Lead Plaintiffs, gave some examples of additional factual allegations that the Lead Plaintiffs would add if given the opportunity to amend the CCAC.  <u>See</u> Tr. at 15:6-16:7 (Sweet).  Betsy Manifold, also an attorney for the Lead Plaintiffs, suggested allegations the Lead Plaintiffs would add to further support their control-person claims and the scienter element of their section 10(b) claims against certain Individual Defendants.  <u>See</u> Tr. at 18:9-25 (Manifold). Ms. Manifold admitted, however, that what they sought was a hybrid motion for leave to amend and motion to reconsider.  <u>See</u> Tr. at 19:4-11 (Manifold).  Mr. Sweet conceded that he would be satisfied if the Court allowed the Lead Plaintiffs to file motions to amend and for reconsideration, rather than grant the relief sought in those motions on the motion for clarification.  <u>See</u> Tr. at 29:12-15 (Court, Sweet).

Steven Farina, Defendant Friedman, Billings, Ramsey & Co., Inc.'s attorney, argued that any motion to amend or for reconsideration would be futile, because the proposed amendments do not cure the deficiencies that the Court has found in the CCAC and there exist no grounds for

reconsideration.  <u>See</u> Tr. at 20:13-23:21 (Court, Farina).  Mr. Farina expressed concerns that the Lead Plaintiffs were blurring the standards used to review those two motions, and conceded that requiring the Lead Plaintiffs to file a written motion would help with that potential problem.  <u>See</u> Tr. at 23:14-24:20 (Court, Farina).  David Bohan, the attorney for UBS Securities and Bear, Stearns, argued that the Court should deny the motion to amend because the Lead Plaintiffs should have brought the motion to amend when the new facts came to their attention, rather than waiting until after the motions to dismiss were granted in part and then challenging whether those dismissals were with or without prejudice.  <u>See</u> Tr. at 25:4-27:17 (Court, Bohan).  Jonathan Dickey, counsel for certain Underwriter Defendants, expressed his confidence that the Lead Plaintiffs' motion to amend and motion to reconsider would fail.  <u>See</u> Tr. at 28:8-13 (Dickey).  He also reminded the Court that his clients are currently dismissed from the action and stressed that the amendment/reconsideration process should move swiftly, and not become a series of rolling amendments as the Lead Plaintiffs try to mend the CCAC and repair their claims against dismissed Defendants.  <u>See</u> Tr. at 27:20-28:25 (Dickey).

## <u>LAW REGARDING AMENDMENT OF PLEADINGS</u>

Under rule 15(a) of the Federal Rules of Civil Procedure, the court should freely grant leave to amend a pleading where justice so requires.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); <u>Youell v. FNU Russell</u>, No. CIV 04-1396 JB/WDS, 2007 WL 709041, at **1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); <u>Burleson v. ENMR-Plateau Tele. Coop.</u>, No. CIV 05-0073 JB/KBM, 2005 WL 3664299, at **1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court of the United States has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given. Fomen v. Davis, 371 U.S. 178, 182 (1962). Furthermore, the United States Court of Appeals for the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim. See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, were the proposed "amendment would be futile." Jefferson County Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Comm'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

## SECTION 10(b) OF THE EXCHANGE ACT

Section 10(b) of the Exchange Act "prohibits the use 'in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe.'" Chiarella v. United States, 445 U.S. 222, 225 (1980)(quoting 15 U.S.C. § 78j, i.e., section 10(b)). Rule 10b-5, promulgated pursuant to section 10(b), makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  According to the Supreme Court, at least in the context of insider-trading claims, this rule requires insiders to disclose all material, nonpublic information in its possession before buying or selling securities.  See Chiarella v. United States, 445 U.S. 222, 227-30 (1980); United States v. Nacchio, 519 F.3d 1140, 1157 (10th Cir. 2008)("It is black-letter law that insiders must disclose their material information or else abstain [from trading].")(citing Chiarella v. United States, 445 U.S. at 226-29), vacated in part on other grounds, 555 F.3d 1234 (10th Cir. 2009)(en banc).  In Garcia v. Cordova, 930 F.2d 826 (10th Cir. 1991), the Tenth Circuit stated:

> Pursuant to Rule 10b-5, insiders involved in securities transactions have a[n] affirmative duty to "disclose material facts which are known to them by virtue of their position but which are not known to persons with whom they deal and which, if known, would affect their investment judgment."  If such disclosure cannot be made, the insider is obligated to abstain from trading.

930 F.2d at 828-29.  See Johnson v. Aljian, 394 F. Supp. 2d 1184, 1196 (C.D. Cal. 2004)("In construing Rule 10b-5, the Supreme Court had held that when a corporate insider trades on the basis of material, nonpublic information, he or she employs a 'deceptive device' as that term is used in Rule 10b-5.")(citing United States v. O'Hagan, 521 U.S. 642, 651-52 (1997)).

It appears that, to properly plead an insider-trading claim, a plaintiff must allege that an insider: (i) intentionally[3] (ii) failed to disclose (iii) material nonpublic information (iv) in connection

---

[3] Because the intent element represents a "particular state of mind," the Private Securities Litigation Reform Act of 1995 requires that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Johnson v. Aljian, 394 F. Supp. 2d at 1197-98.  See 15 U.S.C. § 78u-4(b)(2).

with the purchase and sale of securities, and (v) thereby made a profit.  See Dirks v. SEC, 463 U.S.

646, 653-54 (1983)("[A]n insider will be liable under Rule 10b-5 for inside trading only where he

fails to disclose material nonpublic information before trading on it and thus makes 'secret

profits.'"); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 & n.7 (1976)(holding that scienter, i.e.,

"intent to deceive, manipulate, or defraud," is an element of a private cause of action for damages

under § 10(b) and rule 10b-5); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 735-36

(1975)(recognizing a private cause of action under § 10(b) and rule 10b-5); SEC v. Texas Gulf

Sulphur Co., 401 F.2d 833, 848 (2d Cir. 1968)(en banc), cert. denied, 394 U.S. 976 (1969); Johnson

v. Aljian, 394 F. Supp. 2d at 1196 ("The Ninth Circuit has articulated the elements for an insider

trading claim as the 1) intentional 2) misrepresentation or failure to disclose 3) a material fact 4) in

connection with the purchase or sale of securities.").  An insider must thus abstain from trading in

the shares of the corporation unless the insider has first disclosed all material nonpublic information

in the insider's possession.  See Chiarella v. United States, 445 U.S. at 227.  The doctrine is known

as the "abstain or disclose rule."  Id.  The abstain-or-disclose rule applies both to individual insiders

and to corporate issuers that engage in a public offerings of securities.  See Shaw v. Digital Equip.

Corp., 82 F.3d 1194, 1204 (1st Cir. 1996)(stating that, if corporate issuers of stock were not subject

to liability under the insiders-trading law, "a corporate issuer selling its own securities would be left

free to exploit its informational trading advantage, at the expense of investors, by delaying

disclosure of material nonpublic negative news until after completion of the offering."); McCormick

v. Fund. Am. Cos., 26 F.3d 869, 876 (9th Cir. 1994)("Numerous authorities have held or otherwise

stated that the corporate issuer in possession of material nonpublic information, must, like other

insiders in the same situation, disclose that information to its shareholders or refrain from trading

with them.")(citation omitted); Kohler v. Kohler Co., 319 F.2d 634, 638 (7th Cir. 1963)

("[U]nderlying principles [regarding disclosure of material nonpublic information] apply not only to majority stockholders of corporations and corporate insiders, but equally to corporations themselves,"); Green v. Hamilton Int'l Corp., 437 F. Supp. 723, 728 (S.D.N.Y. 1977)("[T]here can be no doubt that the prohibition against 'insiders' trading extend to a corporation.").

## ITEM 303 OF REGULATION S-K AND REGULATION S-X

Item 303 of Regulation S-K, 17 C.F.R. § 229.303, and Regulation S-X, 17 C.F.R. § 210.4-01, require the independent disclosure of specific information in prospectuses and registration statements.  Item 303 of Regulation S-K requires the disclosure of, among other things, "any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way," and "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. §§ 229.303(a)(1) & (a)(3)(ii).  Some courts have held that a registrant's violation of Item 303 of Regulation S-K can give rise to liability under the federal securities laws. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998)("[A]llegations which sufficiently state a claim under Item 303 also state a claim under section 11 [of the Securities Act and a]llegations which would support a claim under Item 303(a)(3)(ii) are sufficient to support a claim under section 12(a)(2)."); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 70-73 (2d Cir. 2001) (reversing dismissal of claims arising under section 10(b) of the Exchange Act where the plaintiffs adequately pled violation of Item 303 of Regulation S-K); J&R Marketing, SEP v. Gen. Motors Corp., 549 F.3d 384, 392 (6th Cir. 2008)(holding that registrants' disclosure obligations under section 11 include duty under Item 303 to make forward-looking projections regarding information known to registrant); Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 611 (S.D.N.Y. 2008)("An

omission of fact 'required to be stated' under Item 303 will generally produce liability under section

11.")(quoting In re Initial Pub. Offering Sec. Litig., 358 F. Supp. 2d 189, 211 (S.D.N.Y. 2004));

Milman v. Box Hill Sys. Corp., 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999)(denying motion to dismiss

the plaintiffs' claims under sections 11 and 12(a)(2) of Securities Act where the plaintiffs

sufficiently pled violation of Item 303).

Similarly, Regulation S-X, 17 C.F.R. § 210.4-01 requires financial statements which are filed

with the SEC to be in compliance with Generally Accepted Accounting Principles ("GAAP").  See

17 C.F.R. § 210.4-01(a)(1)("Financial statements filed with the Commission which are not prepared

in accordance with generally accepted accounting principles will be presumed misleading or

inaccurate, despite footnotes or other disclosures, unless the Commission has otherwise provided.").

One such GAAP provision, Financial Account Standards ("FAS") 107, at ¶ 15A, Disclosures About

Fair Value of Financial Instruments, as amended by FAS 161, Disclosures About Derivative

Instruments and Hedging Activities (2008), requires the disclosure of "significant concentrations

of credit risk arising from *all* financial instruments, whether from an individual counterparty or

groups of counterparties." (emphasis in original, footnote omitted).

## ANALYSIS

The Lead Plaintiffs seek clarification whether the Court's Memorandum Opinions and

Orders, filed January 27, 2010 (Docs. 251, 252), which dismissed many of the Lead Plaintiffs'

claims against many of the Defendants, were intended to be dismissals with prejudice or without

prejudice.  Within that motion, however, the Lead Plaintiffs appear to be asking the Court whether

they may amend the CCAC to assert new factual allegations.  The Individual Defendants oppose the

Lead Plaintiffs' attempt to seek an amendment, and the Underwriter Defendants oppose the motion

because they believe it is a disguised motion to reconsider.  For the reasons stated on the record, and

for further reasons consistent with those already stated, the Court grants the Lead Plaintiffs' motion to the extent that it seeks clarification. Because the Court did not prohibit the Lead Plaintiffs from seeking reconsideration or leave to amend, because the Lead Plaintiffs admit that they seek both reconsideration and leave to amend, and because the Defendants should have a fair opportunity to oppose the motions with full knowledge of the grounds for, and content of, the proposed amendments and motion for reconsideration, the Court will grant the motion subject to the following specifications.

The Lead Plaintiffs should submit the motion to amend and the motion to reconsider as one motion. The motion should have two sections. Section one should discuss the motion to amend and all the traditional issues that rule 15 of the Federal Rules of Civil Procedure raise. The Lead Plaintiffs should set forth their new facts -- facts that the Court did not previously have before it -- which, if the Court had known the facts, would have changed the outcome of the motion. The Lead Plaintiffs should also address precisely how these new facts would have changed the Court's conclusions. This section should deal only with the new facts and how the new facts would change the analysis as the Court has performed it. The Court asks the Lead Plaintiffs to be particularly intellectually honest on this point. This section should not argue that the Court was incorrect on any particular rule of law in its prior opinion, i.e., that the Court failed to consider the abstain-or-disclose rule, that the facts in the CCAC allege violations of Regulations S-X or S-K, or some other issue of law that the Lead Plaintiffs could have argued in response to the motions to dismiss.[4] The first

---

[4] The Court is not saying that the Lead Plaintiffs cannot invoke law that they believe the Court misapplied in its prior opinion, insofar as they use that law in conjunction with the newly alleged facts and not in conjunction with the facts as they exist in the CCAC. The former is acceptable, while the latter is more appropriate for the second section of the motion.

section should be strictly a motion to amend under rule 15.[5]

The Lead Plaintiffs appear to contend in their motion to clarify that the Defendants had an obligation to disclose or abstain any time they went into the market to sell securities.  In other words, the general rule requiring disclosure of material, nonpublic information before selling applies to the corporation raising capital as much as it does to individuals selling their personal holdings. The Court need not decide on this motion whether this general rule for insider trading displaces the more specific disclosure rules in the circumstances of this case, or whether the Court was wrong in its earlier decision.  The Court is concerned, however, whether a motion to amend will help the Lead Plaintiffs arguments.  For instance, the Court must still find that the undisclosed information was material in order for the Lead Plaintiffs' abstain-or-disclose-duty argument to succeed.  In any case, the firsts section should be limited to additional factual allegations that may create non-futile causes of action.

The second section should encapsulate the proposed motion to reconsider.  In writing that section, the Lead Plaintiffs should not assume that the motion to amend will be granted, and so the

---

[5] The Lead Plaintiffs represent that they will use many of their new allegations to establish a duty to disclose on the Defendants' part.  The Court's January 27, 2010 Memorandum Opinions and Orders, however, dismissed the Lead Plaintiffs claims primarily because they failed to sufficiently allege a strong inference of scienter against most Defendants, or because the information that the Defendants did not disclose was not material or, so far as the facts in the CCAC disclosed, was not false.  See Memorandum Opinion and Order at 29-36 (Doc. 251); Amended Memorandum Opinion and Order at 35-90 (Doc. 252).  Where the Court discussed a lack of a duty-to-disclose was usually in the context of a larger question, such as the sufficiency of the Lead Plaintiffs' scienter allegations.  See Amended Memorandum Opinion and Order at 38-39, 61-65 (Doc. 252).  But see id. at 86 (finding no duty to disclose the cross-default provision in the reverse-repurchase agreements or to disclose general shifts in the marketplace).  The Court thus has some concerns whether further factual allegations or legal arguments establishing a duty to disclose would change the Court's holdings with respect to the Defendants' motions to dismiss.  The Lead Plaintiffs are thus advised to pay close attention to the Court's reasoning in its prior opinions and explain, in detail, why a finding for the Lead Plaintiffs on the motion to amend, to add factual allegations, would change the Court's ultimate conclusions in ruling on the Defendants' motions to dismiss.

Lead Plaintiffs should not assume that the Complaint contains facts that it will add in its proposed amendment.  In this section, the Lead Plaintiffs can address the errors of law that they believe the Court made, but must address them in the context of a motion for reconsideration and explain why the alleged errors justify reconsideration under the appropriate legal standard.

The motion, because it is, in part, a motion to amend, should be accompanied by a proposed second amended complaint.  Given the length of the CCAC, however, it would hinder more than help if the amendment includes substantial re-writing or stylistic changes.  As much as possible, the Lead Plaintiffs should limit the proposed amendments to the changes necessary to present viable claims.  The Lead Plaintiffs should also submit with the proposed amended complaint a red-lined and highlighted copy of the CCAC, reflecting the changes that have been made.  In short, the Lead Plaintiffs should, in the simplest way possible, show the Court and opposing counsel what changes they made.

In sum, the Court grants the Lead Plaintiffs' motion and clarifies that it has not, by its January 27, 2010 Memorandum Opinions and Orders, barred the Lead Plaintiffs from seeking reconsideration and/or leave to amend, but the Lead Plaintiffs' motion for leave to amend and for reconsideration should be consistent with the guidelines set forth in this opinion.  As the parties agreed at the hearing, the Lead Plaintiffs' motion will be due thirty days from the date of the hearing.  Once the Defendants have received the motion, they will have thirty days to file a response. The Lead Plaintiffs will then have thirty days to file their reply brief.  See Tr. at 33:10-34:25 (Court, Badal, Manifold).

**IT IS ORDERED** that the Plaintiffs' Motion for Clarification of the Court's January 27, 2010 Memorandum Opinions and Orders Granting in Part and Denying in Part Defendants' Motions to Dismiss the Consolidated Amended Complaint is granted.  The Court

clarifies that the Lead Plaintiffs may file a motion to amend and a motion to reconsider, but in doing

so, the Lead Plaintiffs must conform precisely with the guidelines set forth in this order.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Frederick S. Fox
Aviah Cohen Pierson
Kaplan Fox & Kilsheimer
New York, New York

-- and --

Richard A. Lockridge
Nathan D. Prosser
Karen H. Riebel
Lockridge Gindal Nauen & Holstein
Minneapolis, Minnesota

-- and --

Nancy Kaboolian
Abbey Spanier Rodd Abrams & Paradis, LLP
New York, New York

-- and --

Curtis V. Trinko
Law Offices of Curtis V. Trinko, LLP
New York, New York

-- and --

Evan J. Smith
Brodsky & Smith, L.L.C.
Mineola, New York

-- and --

David R. Scott
Scott & Scott, LLC
Colchester, Connecticut

-- and --

Arthur Shingler, III
Scott & Scott, LLP
San Diego, California

-- and --

Charlotte Itoh
Cody Kelley
Kelley Law Offices
Albuquerque, New Mexico

-- and --

Shane C. Youtz
Albuquerque, New Mexico

-- and --

Turner W. Branch
Branch Law Firm
Albuquerque, New Mexico

-- and --

Fred T. Isquith
Gregory Nespole
Rachel S. Poplock
Martin E. Restituyo
Wolf Haldenstein Adler Freeman & Herz, LLP
New York, New York

-- and --

Betsy C. Manifold
Francis M. Gregorek
Rachele R. Rickert
Patrick Moran
Wolf Haldenstein Adler Freeman & Herz, LLP
San Diego, California

-- and --

Andrew Zivitz
Benjamin Sweet
Michelle Newcomer
Richard Russo, Jr.
Sean M. Handler
Stewart L. Berman
D. Seamus Kaskela
Barroway Topaz Kessler Meltzer & Check, LLP
Radnor, Pennsylvania

     *Attorneys for the Plaintiffs*

Amy L. Neuhardt
Boies, Schiller & Flexner, LLP
Washington, District of Columbia

-- and --

Donald L. Flexner
Philip C. Korologos
Boies, Schiller & Flexner, LLP
New York, New York

     *Attorneys for Defendants Garrett Thornburg, Anne-Drue M. Anderson, David A. Ater, Joseph H. Badal, Eliot R. Cutler, Ike Kalangis, Francis I. Mullin, III, Stuart C. Sherman, and Paul G. Decoff*

Frank T. Herdman
Rubin Katz Law Firm, P.C.
Santa Fe, New Mexico

-- and --

William H. Forman
Scheper Kim & Overland, LLP
Los Angeles, California

-- and --

David F. Cunningham
Thompson, Hickey, Cunningham, Clow & April, P.A.
Santa Fe, New Mexico

>*Attorneys for Defendants Thornburg Mortgage, Inc., Garrett Thornburg, Larry A. Goldstone, Clarence G. Simmons, Anne-Drue M. Anderson, David A. Ater, Joseph H. Badal, Eliot R. Cutler, Michael B. Jeffers, Ike Kalangis, Owen M. Lopez, Francis I. Mullin, III, and Stuart C. Sherman*

Clinton W. Marrs
Tax, Estate & Business Law, N.A., LLC
Albuquerque, New Mexico

>*Attorney for Defendants Larry A. Goldstone and Clarence G. Simmons*

Robert Badal
WilmerHale
Los Angeles, California

>*Attorney for Defendants Thornburg Mortgage, Inc., Larry A. Goldstone, Clarence G. Simmons, Michael B. Jeffers, and Owen M. Lopez*

Joel Sher
Shapiro Sher Guinot & Sandler
Baltimore, Maryland

-- and --

Mary R. Jenke
Walsh Anderson Brown Aldridge & Gallegos
Albuquerque, New Mexico

>*Attorneys for Thornburg Mortgage, Inc.*

Clifford K. Atkinson
John Thal
Atkinson & Thal, P.C.
Albuquerque, New Mexico

>    *Attorneys for Defendants AG Edwards & Sons, Inc., BB&T Capital Markets, UBS
>    Securities, Citigroup Global Markets Inc., Friedman, Billings, Ramsey & Co.,
>    Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., Stifel, Nicolaus &
>    Company, Inc., and Bear Stearns & Co.*

Jonathan C. Dickey
Gibson, Dunn & Crutcher, LLP
New York, New York

-- and --

Dean J. Kitchens
Lindsay R. Pennington
Gibson, Dunn & Crutcher, LLP
Los Angeles, California

>    *Attorneys for Defendants AG Edwards & Sons, Inc., BB&T Capital Markets, Citigroup
>    Global Markets Inc., Oppenheimer & Company, Inc., RBC Dain Rauscher Corp., and
>    Stifel, Nicolaus & Company, Inc.*

David Bohan
David Stagman
Katten Muchin Rosenman, LLP
Chicago, Illinois

>    *Attorneys for Defendants UBS Securities and Bear Stearns & Co.*

William Pittard
Williams & Connolly, LLP
Washington, D.C.

>    *Attorney for Defendant Friedman, Billings, Ramsey & Co.*